UNITED STATES of America, Plaintiff,

v.

LOV–IT CREAMERY, INC., Roger L. Jahnke, and David M. Jahnke, Defendants.

No. 88–CR–93.

United States District Court, E.D. Wisconsin.

Jan. 18, 1989.

1534

Joan F. Kessler, Foley & Lardner, Milwaukee, Wis., for defendant Lov–It Creamery, Inc.

Stephen M. Glynn, Shellow, Shellow & Glynn, S.C., Milwaukee, Wis., for defendant Roger L. Jahnke.

Donald R. Zuidmulder, Zuidmulder, Gazeley & Appel, S.C., Green Bay, Wis., for defendant David Jahnke.

## DECISION AND ORDER

WARREN, Chief Judge.

### I. *Background*

Defendants Lov–It Creamery, Inc., Roger L. Jahnke and David M. Jahnke[1] were charged in a one-count Indictment returned July 19, 1988, with conspiring, from May 1, 1979, through June 30, 1985, to steal, remove and convert butter owned by the Commodity Credit Corporation of the United States, in violation of 15 U.S.C. § 714m(d).

Section 714m(d) provides:

Conspiracy to commit offense

Whoever conspires with another to accomplish any of the acts made unlawful by the preceding provisions of this section shall, upon conviction thereof, be subject to the same fine or imprisonment, or both, as is applicable in the case of conviction for doing such unlawful acts.

Section 714m(c) provides, in part:

Larceny; conversion of property

Whoever shall willfully steal, conceal, remove, dispose of, or convert to his own use or to that of another any property owned or held by, or mortgaged or pledged to, the [Commodity Credit] Corporation ... shall, upon conviction thereof, if such property be of an amount or value in excess of $500, be punished by a fine of not more than $10,000 or by imprisonment for not more than five years, or both, and, if such property be of an amount or value of $500 or less, be punished by a fine of not more than $1,000 or by imprisonment for not more than one year, or both.

Mel S. Johnson, James L. Santelle, Asst. U.S. Attys., Milwaukee, Wis., for plaintiff.

---

1. David M. Jahnke is the nephew of Roger L. Jahnke.

The Indictment in this case listed 42 overt acts in furtherance of the conspiracy, including instances where scales used to weigh butter were altered, where employees of Lov–It Creamery took blocks of butter owned by the Commodity Credit Corporation out of their boxes and placed the blocks into Lov–It Creamery boxes, and where Lov–It made payments to Roger and David Jahnke in amounts totaling more than $1.5 million.

On July 29, 1988, each of the defendants were arraigned and entered pleas of not guilty. Pursuant to a pretrial scheduling order, the parties filed various pretrial motions.

On December 19, 1988, United States Magistrate Robert L. Bittner issued a *Magistrate's Recommendation to the Honorable Robert W. Warren and Order,* wherein he:

(1) recommended that this Court grant Lov–It Creamery's motion for determination of maximum sentence and subsequent leave to change its plea to nolo contendere;

(2) recommended that this Court deny the motions of all three defendants to dismiss or, in the alternative, to suppress;

(3) recommended that this Court deny Lov–It Creamery's motion to dismiss for failure to allege a conspiracy by a corporation;

(4) recommended that this Court deny the motions of all three defendants to dismiss the Indictment because of impermissible vagueness in the corporate conspiracy charge and failure to identify co-conspirators;

(5) recommended that this Court grant Lov–It Creamery's motion for severance;

(6) recommended that this Court grant David Jahnke's motion for severance;

(7) issued an order granting in part and denying in part the motions of all defendants for a bill of particulars and leave to file additional motions;

(8) issued an order denying the motions in limine of all defendants regarding employee testimony;

(9) issued an order denying the motions of all defendants to strike prejudicial surplusage in the Indictment;

(10) issued an order denying the motions of all defendants to inspect grand jury minutes and for extension of time to move to dismiss; and

(11) issued an order denying the motion of all defendants for discovery and to compel production of exculpatory evidence.

The recommendation on the motion for determination of a maximum sentence determined that the maximum penalty faced by Lov–It Creamery was a fine of $10,000.

Following the issuance of the Magistrate's decision, the United States ("government") filed written objections to his recommendations on Lov–It Creamery's motion for determination of the maximum sentence and subsequent leave to change its plea and the motions for severance.

Lov–It Creamery filed written objections to the Magistrate's recommendations on: the motion to dismiss or, in the alternative, to suppress evidence; the motion to dismiss the Indictment for failure to allege a conspiracy by a corporation; the motion to dismiss the Indictment because of impermissible vagueness in the corporate conspiracy charge and failure to identify co-conspirators; and the motion to strike prejudicial surplusage in the Indictment. Lov–It Creamery also appeals the Magistrate's order denying the motion to compel production of exculpatory evidence. In a letter to the Court accompanying a brief on these motions, counsel for Lov–It informed the Court that the objections were contingent on the Court's determination of whether to accept the Magistrate's recommendation on the maximum sentence and leave to change its plea. The letter states that if the Court accepts the Magistrate's recommendation, Lov–It Creamery would change its plea, which would moot the objections.

Roger Jahnke filed written objections to the Magistrate's recommendations on the motion to dismiss or, in the alternative, to suppress evidence and on the motion to dismiss because of impermissible vagueness in the corporate conspiracy charge and failure to identify co-conspirators.

Roger Jahnke also appealed the Magistrate's orders denying the motion to strike prejudicial surplusage in the Indictment and denying the motion for discovery and to compel production of exculpatory evidence. In addition, Roger Jahnke incorporated the objections and arguments of Lov-It Creamery.

In a letter to the Court dated December 29, 1988, counsel for David Jahnke joined in the objections of the other two defendants.

Lov-It Creamery timely filed a response to the objections of the United States. No other responsive filings were made.

The Court now turns to merits of the pending objections and appeals.

## II. *Standard of Review*

Appeals of the Magistrate's orders on non-dispositive motions are covered under 28 U.S.C. § 636(b)(1)(A) and Local Rule 13.-02(b) (E.D.Wis.). Under Rule 13.02(b), a party must specify the basis for the appeal.

> ... The judge assigned to the case shall consider the appeal and set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law. The judge may also consider any matter sua sponte.

Rule 13.02(b).

■ An objection to a Magistrate's recommendation is a matter raised under 28 U.S.C. § 636(b)(1)(B) and (C) and Local Rule 13.03(c) (E.D.Wis.). In considering the objection,

> The judge shall make a *de novo* determination of those portions to which objection is made and may accept, reject or modify, in whole or in part, the findings made by the magistrate.

Rule 13.03(c). The district court's duty to make a *de novo* determination does not arise unless the objecting party makes specific reference to the portion of the magistrate's decision that the party is attacking. *United States v. Molinaro*, 683 F.Supp. 205, 211 (E.D.Wis.1988).

> Without specific reference to portions of the Magistrate's decision and legal discussion on the objected portion, the district court's duty to make a *de novo*

determination does not arise. The general statements that a party "objects" and "incorporates all arguments previously made to the magistrate" will not suffice. *Id.*

## III. *Maximum Penalty and Nolo Contendere Plea*

Lov-It Creamery, through its motion for determination of maximum sentence and for subsequent leave to change its plea, sought to have the Court determine that Lov-It Creamery's maximum penalty is $10,000. Lov-It then sought leave to plead nolo contendere so as to avoid the cost, business disruption, and uncertainty of defending this case. Magistrate Bittner recommended that the Court grant both parts of the motion. His recommendation on the maximum sentence was based on several factors. First, he determined that a corporation, as a legal fiction, cannot be sentenced to imprisonment, leaving available as a penalty only the $10,000 fine. Second, he found that the limiting language of section 714m prevented the United States from seeking an alternative fine under 18 U.S.C. § 3623. Finally, he found that an alternative fine under section 3623 or probation, including restitution, under 18 U.S. C. § 3651 were no longer available because they were repealed by the Sentencing Reform Act of 1984, which became effective November 1, 1987.

The Court finds that the Magistrate misconstrued the provisions of section 714m and the ramifications of the Sentencing Reform Act. For these reasons, as more fully set forth below, the Court declines to adopt the Magistrate's recommendation.

Section 714m(d) puts the penalty for conspiring to commit an offense under that section at the same level as the underlying offense. Section 714m(c), the underlying offense for the case at hand, sets the penalty for an offense involving property worth more than $500 at a fine of $10,000 or imprisonment for not more than five years, or both. Section 714m(e), however, adds the following language.

General statutes applicable.

All the general penal statutes relating to crimes and offenses against the United States shall apply with respect to the [Commodity Credit] Corporation, its property, money, contracts and agreements, employees and operations: Provided, That such general penal statutes shall not apply to the extent that they relate to crimes and offenses punishable under subsections (a), (b), (c), and (d) of this section....

The Magistrate found that this language prevented the United States from pursuing an alternative fine under 18 U.S.C. § 3623. Lov–It Creamery adds that this same language prevents the United States from seeking probation under 18 U.S.C. § 3651.

The Court does not agree. In construing this language, the Court begins by looking at the plain language of the statute. *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981).

Indeed, in most instances a court need not go beyond the words of the statute.... We look beyond the words Congress has chosen in only a limited number of circumstances. If the language of the act is ambiguous, we will examine the legislative history surrounding its enactment. We may not use the legislative history to create an ambiguity, however, for the words of the statute are usually the best indication of congressional intent. *See Turkette,* 452 U.S. at 593, 101 S.Ct. 2533. If the language of the act is unambiguous, only a " 'clearly expressed legislative intent to the contrary will lead to a different result.' " *Id.* at 580, 101 S.Ct. at 2527 (*quoting Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102 [100 S.Ct. 2051, 64 L.Ed.2d 766] (1980)).

*United States v. Nichols,* 841 F.2d 1485, 1491–92 (10th Cir.1988); *see also United States v. Stein,* 690 F.Supp. 767, 771 (E.D. Wis.1988). In general, criminal statutes must be strictly construed. *United States v. Gannon,* 684 F.2d 433, 437 (7th Cir.), *cert. denied,* 454 U.S. 940, 102 S.Ct. 475, 70 L.Ed.2d 248 (1981). But a statute should not be interpreted in a way that renders the statute meaningless or ineffective. *Id.*

The Court reads the plain language of section 714m(e) as preempting a general penal statute only if the general statute criminalizes activity that is also a crime under subsections (a) through (d) of section 714m. That is, if someone were to steal cheese belonging to the Commodity Credit Corporation, that person would have to be prosecuted, if at all, under section 714m(c)—as opposed to being prosecuted under 18 U.S. C. § 641 (theft of property belonging to the United States), 18 U.S.C. § 659 (theft of property in interstate shipment), or 18 U.S. C. § 1708 (theft from mail). *See United States v. Ray,* 514 F.2d 418 (7th Cir.1975) (theft of butter from Commodity Credit Corporation could not be offense under 18 U.S.C. § 641 if conduct constituted an offense under 15 U.S.C. § 714m(c)); *see also United States v. Harbour,* 809 F.2d 384, 391 (7th Cir.1987). But this same language does not preclude application of other general penal statutes, such as the various penalty provisions of Title 18, simply because those penalty provisions also apply to 18 U.S.C. §§ 641, 659, or 1708. Such an interpretation is not mandated by the plain words of section 714m(e), which in general emphasize the applicability, not inapplicability, of the general penal statutes. Furthermore, such an interpretation is not mandated by the larger framework of section 714. Section 714 creates the Commodity Credit Corporation. Section 714m criminalizes certain activity involving the Corporation. But nowhere in section 714 does Congress establish a self-contained criminal code. Provisions establishing pretrial release, rules of criminal procedure, imprisonment, collection of fines, and the like are not present. For section 714m to have meaning, courts must have reference to various provisions of Title 18. The Magistrate's reading of section 714m, as well as that reading urged by Lov–It Creamery, would bar courts from referring to procedural and penalty provisions of Title 18 simply because those provisions also apply to the criminalization of theft by various general penal statutes.

Reference to the legislative history of section 714m does not lead to a contrary finding. Congress' concern was protecting

the property of the Commodity Credit Corporation in the same manner that the property of other United States corporations was protected. *See* S.R. No. 1022, 80th Cong., 2nd Sess., reprinted in 2 U.S. Code Congressional Service, at 2138, 2154 (1948). Without reference to the penalty and enforcement provisions of Title 18, section 714m provides no stronger protection for the Corporation than the paper on which it is written.

■ Therefore, the Court finds that the language of section 714m(e) does not prevent reference to the penalty provisions contained in Title 18, including an alternative fine under section 3623 or probation under section 3651.

While the language of section 714m does not preclude application of certain penalty provisions of Title 18, the Court also must determine whether the reverse is true. That is, whether sections 3623 and 3651, by their respective terms, permit an application to 15 U.S.C. § 714m. The Magistrate, based on his reading of the limiting language of section 714(e) and of *United States v. Holmes*, 822 F.2d 481, 495 (5th Cir.1987), found that 18 U.S.C. § 3623 could not increase the maximum penalty where there is a specific statute limiting the penalty to be imposed for a particular offense. The Court finds this interpretation in error. Section 3623 provides in part:

Alternative fines

... (b) A person (other than an individual) convicted of an offense may be fined not more than the greatest of—

(1) the amount specified in the law setting forth the offense;

(2) the applicable amount under subsection (c) of this section;

(3) in the case of a felony, $500,000;

(4) in the case of a misdemeanor resulting in death, $500,000;

(5) in the case of a misdemeanor punishable by imprisonment for more than six months, $100,000.

(c)(1) If the defendant derives pecuniary gain from the offense, or if the offense results in pecuniary loss to another person, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss, unless imposition of a fine under this subsection would unduly complicate or prolong the sentencing process....

■ As seen above, this Court does not find that section 714m(e) limits the application of section 3623 to 15 U.S.C. § 714m(d). Furthermore, the Court finds that section 3623 can still be used even if a statute sets a specific limit on the amount of the fine. The very terms of section 3623(b) provide that courts may impose the greatest of several amounts, including the specific amount in the law setting forth the offense. As recognized by the court in *United States v. Holmes*, the congressional purpose behind this statute was to enact a broadly applicable statute permitting higher fines to be imposed in a majority of cases. 822 F.2d 481.

> The maximum fines of present law—except for some of the recently enacted ones and some of the regulatory offenses—are too low to constitute significant punishments for the offense involved.... To the extent that maximum fine levels are increased, the fine becomes a more severe punishment and more attractive as an alternative to prison.

*Id.* (*quoting* H.R.Rep. No. 98–906, 98th Cong. 2nd Sess., 16, reprinted in 1984 U.S. Code Cong. & Ad.News 5433 at 5448–49). Moreover, this Court does not read *Holmes* as preventing the imposition of an alternative fine if a specific statute limits the penalty for a particular offense. *Holmes* held that an alternative fine under section 3623 cannot be imposed *in addition* to those penalties authorized by the offense statute. *See* 822 F.2d at 494–96.

■ Lov-It Creamery further argues that wording of a restitution statute, 18 U.S.C. § 3556, prevents its application to statutes other than those in Title 18. That section provides:

> The court, in imposing a sentence on a defendant who has been found guilty of an offense under this title ... may order, in addition to that sentence that is imposed pursuant to the provisions of sec-

tion 3551, that the defendant make restitution to any victim of the offense in accordance with sections 3663 and 3664. But even if this provision were to apply to offenses exclusively within Title 18, it is not the only statute that empowers a court to order restitution. Another provision, 18 U.S.C. § 3651, applies to "any offense not punishable by death or life imprisonment" and provides for probation with "restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which the conviction was had." *See United States v. John Scher Presents, Inc.*, 746 F.2d 959, 963 (3rd Cir.1984) (section 3651 allows courts to order corporation to make restitution, in addition to imposing fine); *see also United States v. Interstate Cigar Co., Inc.*, 801 F.2d 555, 556 (1st Cir.1986) (listing various cases discussing conditions of probation placed on corporations).

■ Sections 3623 and 3651 have been repealed by the Sentencing Reform Act of 1984. Pub.L. 98–73, Title II, section 212(a)(2), Oct. 12, 1984, 98 Stat. 1987. The Sentencing Reform Act became effective November 1, 1987, but applies only to offenses committed after that date. *United States v. Stewart*, 865 F.2d 115, 116–17 (7th Cir.1988). The Magistrate concluded that since November 1, 1987 has passed, sections 3623 and 3651 have no effect. But this reasoning creates a vacuum that would bar the post-November 1, 1987 imposition of sentence for any conviction for conduct prior to November 1, 1987. The Court disagrees with this reasoning. While the wording of the Act on this question may not be particularly clear, the intent of Congress is. According to the Senate Report on section 235(a)(1) of the Act,

> The title will apply to any offense or other event occurring on or after the effective date.... As to an offense committed prior to the effective date, the preexisting law will apply as to all substantive matters including the impossible sentence.

S.Rep. No. 98–225, 98th Cong., 2d Sess. 189, reprinted in 1984 U.S.Code Cong. & Adm.News 3182, 3372 (excerpted in *United States v. Stewart*, at 117). Section 109 of Title 1 also operates to keep the previous sentencing provisions in place for offenses committed prior to November 1, 1987. *United States v. Stewart*, at 118 & n. 4. Based on this authority, this Court finds no basis for the position that 18 U.S.C. §§ 3623 and 3651 have no present effect for conduct committed prior to November 1, 1987.

■ Therefore, the Court finds that the maximum penalty that may be imposed against Lov–It Creamery is the greatest available fine under 18 U.S.C. § 3663. Absent a calculation under section 3623(c)(1), that amount would be $500,000. The Court further finds that Lov–It Creamery may also be placed on probation under 18 U.S.C. § 3651 and that the probation may include restitution.

Based on the Court's ruling above, it is questionable whether Lov–It Creamery still wishes to enter a plea of nolo contendere. In any event, the Court declines to follow the Magistrate's reasoning on this issue as well. Rule 11(b) of the Federal Rules of Criminal Procedure provides:

> A defendant may plead nolo contendere only with the consent of the court. Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice.

In support of its motion for leave to enter a plea of nolo contendere, Lov–It Creamery argued that the plea would allow it to avoid the expense, business disruption, and uncertainty of defending this case. The government responded that the nolo contendere plea puts the Court in the awkward position of trying to fashion a sentence for a defendant whose culpability has not been clearly established. The government further argued that the plea leaves the public with the impression that the violation was merely technical. The Magistrate determined that a balancing of factors weighed in favor of acceptance of a nolo contendere plea. He reasoned that the $10,000 maximum fine did not put the Court in an awkward position in imposing sentence. The Magistrate further stated

that he was unpersuaded by the fears of the government on the public impression of the offense.

█ This Court finds that the interests of justice weigh heavily in favor of rejecting a nolo contendere plea.

The primary consideration [for determining whether to accept a nolo contendere plea] is not that the defendant will be benefited by the plea, or that the case is a difficult and protracted one for the defendant, but the test to be applied is whether acceptance of the plea will be in the interest of sound administration of justice. Needless to say, consent should be withheld if acceptance of the plea would breed contempt for law enforcement, would be discriminatory, and would be incongruous.

2 Orfield's *Criminal Procedure Under the Federal Rules* § 11:61 (2d ed.1985) (footnotes omitted).

The Indictment in the case at hand charges a serious offense that undoubtedly is of concern to the general public in an age of continuing revelations of frauds on the government. Lov-It Creamery is accused of systematically cheating the United States over a six-year-period of butter owned by to the Commodity Credit Corporation. Certainly justice is best served by a clear-cut determination of the guilt or innocence of Lov-It Creamery, as well as a determination of the extent of the conspiracy. While the Court ultimately adjudges a defendant guilty following a nolo contendere plea, the position of the defendant in a case such as this certainly is relevant. Allowing Lov-It Creamery to plead nolo contendere and accept a monetary fine permits the corporation to consider this matter in nothing more than a bottom-line fashion.

### IV. *Severance*

Lov-It Creamery and David Jahnke moved for severance of their trials from Roger Jahnke based on two affidavits of Roger Jahnke. The affidavits state that Roger Jahnke, if called as a witness by either of the other two defendants in a joint trial, would assert his Fifth Amendment privilege against self-incrimination. The affidavits go on to state, however, that if

Roger Jahnke were called as a witness in a separate trial after his had been completed, he would testify as to various matters concerning his control of the government contract operation of Lov-It Creamery since 1979. In particular, Roger Jahnke would testify that he alone directed the activities relating to use, storage, disposition and movement of government butter and that David Jahnke acted solely at his (Roger Jahnke's) direction and not pursuant to any agreement. Roger Jahnke's affidavits also provide innocent explanations for some of the overt acts listed in the Indictment. Lov-It Creamery and David Jahnke argued that if there is a joint trial, they will be deprived of the exculpatory testimony of Roger Jahnke. The United States opposed the motion on various grounds.

The Magistrate balanced the factors applicable to a motion for severance and concluded that this Court should grant the motions for severance. Since this Court does not agree with the evaluation made by the Magistrate of those factors, the Court, with certain reservations, declines to follow his recommendation. In particular, as more fully explained below, the Court finds that given the overwhelming effect of a severance on judicial administration and economy, the motions for severance should be denied without prejudice, subject to renewal at the close of trial with the United States running the risk of a mistrial.

█ The applicable law is not in dispute. The decision whether to grant a motion for severance under Rule 14 of the Federal Rules of Criminal Procedure is left to the trial court's discretion and will not be disturbed on appeal, absent an abuse of discretion. *United States v. Cirrincione*, 780 F.2d 620, 632 (7th Cir.1985). On appeal, appellants bear a heavy burden of showing that they were prejudiced by the joinder and thereby denied a fair trial. *United States v. West*, 670 F.2d 675 (7th Cir.), *cert. denied*, 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982). The reason for such deference is that, where joinder is proper under Rule 8 of the Federal Rules of Criminal Procedure, there are substantial economies to be gained from a joint

trial. *United States v. Valasquez*, 772 F.2d 1348, 1353 (7th Cir.1985), *cert. denied*, 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986). In particular, persons indicted together as part of a conspiracy should be tried together, unless severance is needed to ensure defendants a fair trial. *United States v. Peters*, 791 F.2d 1270, 1301–02 (7th Cir.), *cert. denied*, 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986). In considering a motion for severance based on the contention that failure to sever trials of codefendants will deprive a defendant of exculpatory testimony, a court should examine various factors, including:

(1) the likelihood that the codefendant would in fact testify at the movant's severed trial and waive his Fifth Amendment privilege;

(2) the significance of the testimony in relation to the defendant's theory of defense; the exculpatory nature and effect of such testimony; and the extent of prejudice caused by the absence of the testimony;

(3) the likelihood that the codefendant's testimony would be impeached; and

(4) the complexity of the case, its length and the effect of a severance on judicial administration and economy.

*United States v. McConnell*, 749 F.2d 1441, 1445 (10th Cir.1984); *United States v. Andrus*, 775 F.2d 825, 846–47 (7th Cir. 1985); *United States v. Harris*, 542 F.2d 1283, 1313 (7th Cir.1976), *cert. denied*, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977). In considering the exculpatory nature of the proffered testimony, a court must bear in mind that the testimony must do more than refute part of the government's proof or make acquittal more likely. *United States v. Andrus*, 775 F.2d at 847; *United States v. West*, 670 F.2d at 680. A defendant must demonstrate that absent the testimony, he will be deprived of a fair trial. *United States v. Andrus*, 775 F.2d at 847.

■ In considering these factors, the Court finds that there is a likelihood that Roger Jahnke would testify at a severed trial since he signed an affidavit to that effect. The Court also finds that the affi-davits, standing alone, may provide the other defendants with exculpatory testimony. But depending on the nature of the government's proof, the testimony also may prove to refute only part of the government's proof. Furthermore, the factors outlined above require consideration of the proffered testimony in the light of other circumstances of the case, such as the testimony's relation to the particular theory of the defense and the extent of prejudice caused by the absence of the testimony. Such evaluations may be extremely difficult in a pretrial setting. *See United States v. Ely*, Case No. 88–CR–97, Slip Op. at 8–9 (E.D.Wis. December 2, 1988) [1988 WL 150000] (motion for severance of counts hinged on pre-trial evaluation of government's witnesses). In the case at hand, it is difficult for the Court to find at this stage of the proceedings that many of the matters raised in Roger Jahnke's affidavits could not be brought in through other witnesses, particularly those matters going to his specific duties and those describing the general operations at Lov–It Creamery. Is Roger Jahnke alone the only one who knows what Roger Jahnke does? Of course the key testimony of the affidavits is Roger Jahnke's explanation of his working relationship with David Jahnke, including Roger Jahnke's denial of any agreement with David Jahnke, and Roger Jahnke's explanation of various overt acts listed in the Indictment. But this testimony may not exculpate the other two defendants when other evidence is presented at trial. Certainly activities may have taken place without Roger Jahnke's knowledge, even though he believed that he had total control over the government contract operation. A Bill of Particulars presented by the United States lists three other co-conspirators. Even assuming a jury would accept Roger Jahnke's testimony, a finding of guilt as to the two other defendants may not be foreclosed based on the testimony of the other co-conspirators. *See* Federal Criminal Jury Instructions of the Seventh Circuit 5.11.

There also is the question of whether Roger Jahnke's testimony would be impeached. The Magistrate reasoned that de-

spite Roger Jahnke's long-time employment with Lov–It Creamery and his family relationship with David Jahnke, his credibility would be enhanced by the inculpatory nature of his testimony. The Court disagrees. The affidavits in no way admit any essential elements of the offense. *See* Federal Criminal Jury Instructions of the Seventh Circuit 5.11. Also, the testimony of the three unindicted co-conspirators may further undermine Roger Jahnke's credibility.

An evaluation of the likelihood of impeachment of Roger Jahnke's testimony, as with an evaluation of the importance of the testimony to the other defendants receiving a fair trial, is perilously speculative. It may well be that in the absence of a severed trial, Lov–It Creamery and David Jahnke will be deprived of a fair trial. At this stage of the proceedings though, the Court would find that the proffered affidavits make the risk of an unfair trial inconclusive at best.

But against this uncertainty lies the overwhelming judicial economies in having this case tried but once. The Court has set aside a month for this trial—an increasingly-difficult task in light of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, and the ever-growing number of cocaine cases. According to the United States, the evidence against each defendant is essentially the same. The government further states that it will call more than 20 witnesses, all from outside the Milwaukee area, and that there will be expert testimony from both sides. Moreover, defense counsel sought, and received, a continuance of the trial date based on the magnitude and complexity of the case. *See* Defendants' Joint Motion for Extension and Continuance.

Therefore, based on an evaluation of the above factors, the Court will deny the motions for severance without prejudice and allow defendants to renew their motions at trial when an evaluation of Roger Jahnke's testimony can more accurately be made in light of the evidence actually presented. *See United States v. Ely*, Slip Op. at 9. Under this ruling, the United States runs the risk of a mistrial. That same risk, however, would have been present had the Court denied the motions with prejudice. *See United States v. Echeles*, 352 F.2d 892, 898 (7th Cir.1965).

## V. *Corporate Conspiracy*

■ Lov–It Creamery filed a motion to dismiss the Indictment on grounds that neither the Indictment nor the response of the United States to a request for a bill of particulars set forth the elements of a conspiracy by a corporation. In particular, Lov–It Creamery argued that a corporation, including its agents, is no more able to conspire with itself than is a singular, private individual. As support for this position, Lov–It Creamery relied on *Nelson Radio & Supply Co. v. Motorola*, 200 F.2d 911, 914 (5th Cir.1952), *cert. denied*, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953), and *Copperweld Corporation v. Independence Tube Corporation*, 467 U.S. 752, 771–74, 104 S.Ct. 2731, 2741–43, 81 L.Ed.2d 628 (1984), which were civil antitrust cases. The Magistrate recommended that the Court deny Lov–It Creamery's motion. Citing case law from the First, Fifth, Sixth, Eighth and Eleventh circuits, the Magistrate pointed out that courts have refused to allow use of the corporate fiction as a shield to criminal liability. *See* Magistrate's Recommendation at 22–26 (discussing *United States v. Peters*, 732 F.2d 1004 (1st Cir.1984); *Dussouy v. Gulf Coast Investment Corporation*, 660 F.2d 594 (5th Cir.1981); *United States v. S. & Vee Cartage Company, Inc.*, 704 F.2d 914 (6th Cir.), *cert. denied*, 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983); *United States v. American Grain & Related Industries*, 763 F.2d 312 (8th Cir.1985); and *United States v. Hartley*, 678 F.2d 961 (11 Cir. 1982), *cert. denied* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983)). These cases have held that a corporation can be convicted of criminal conspiracy for the acts of two or more of its agents conspiring together on behalf of the corporation.

An objection to the Magistrate's recommendation was filed by Lov–It Creamery. The objection contends that the Magistrate erred in distinguishing the law of conspir-

acy under the statute involved in this case and those involved in antitrust cases.

The Court has reviewed the reasoning of the Magistrate and finds the objection without merit. Lov–It Creamery makes much of what it sees as a unique state of mind element under 15 U.S.C. § 715m(d). Comparing the wording of the statute to that of 18 U.S.C. § 371, another criminal conspiracy statute, Lov–It Creamery argues that since no overt acts are required under section 715m(d), the focus is on the mental intent to agree to conspire. Lov–It Creamery contends that this mental state cannot be formed by a fictional entity. But this argument ignores the fact that the required intent element of a conspiracy charge does not change simply because an overt act is not required by the applicable statute. *See* Federal Criminal Jury Instructions of the Seventh Circuit 5.11 & Committee Comment. Thus, the case law dealing with a corporation conspiring to commit an offense under 18 U.S.C. § 371 is not inapplicable to this issue. In addition, the Court notes that while the Seventh Circuit has been hesitant to add an overt act requirement to a statutory conspiracy that does not by its language require such an act, *see United States v. Umentum,* 547 F.2d 987, 989–91 (7th Cir.1976), the Eighth Circuit in the 1985 *American Grain* case approved a jury instruction on a section 714m(d) case that required proof of at least one overt act listed in the Indictment. 763 F.2d at 320. Finally, the Court agrees with the Magistrate that although the United States Court of Appeals for the Seventh Circuit has not ruled on this issue, it would likely follow the holdings of the First, Fifth, Sixth, Eighth and Eleventh circuits and find that a corporation can be convicted of criminal conspiracy when two or more of its agents conspire together on behalf of the corporation. Therefore, the Court will adopt the reasoning of the Magistrate and deny Lov–It Creamery's motion to dismiss the Indictment on the grounds that the Indictment fails to set forth the elements of conspiracy by a corporation.

## VI. *Sufficiency of the Indictment*

All three defendants filed motions to dismiss the Indictment for failure to supply sufficient information identifying the participants in the alleged conspiracy to enable defendants to prepare an adequate defense and to avoid the risk of subsequent prosecution arising out of the same operative facts involving the alleged co-conspirators. The Magistrate recommended that the Court deny the motions. He found that the Indictment passed muster since it provided defendants with a clear and explicit description of the nature and scope of the alleged violation. He further found that the Indictment supplied sufficient detail of the charges against defendants such that they could (1) prepare a defense, (2) insure that they are being prosecuted on the basis of facts presented to the grand jury, and (3) plead double jeopardy against a subsequent prosecution; thus meeting the standard for judging the sufficiency of an indictment as put forth in *United States v. Johnson,* 805 F.2d 753, 757–58 (7th Cir. 1986).

Lov–It Creamery and Roger Jahnke filed objections to the Magistrate's recommendation on their motions. The objections, however, simply incorporate all arguments previously made before the Magistrate. The objections do not discuss any particular aspect of the Magistrate's reasoning.

The Court has reviewed the Magistrate's determination and finds the analysis appropriate. Therefore, the Court will adopt the Magistrate's reasoning and deny the motions of all defendants to dismiss the Indictment for failure to provide sufficient information.

## VII. *Failure to Preserve Evidence*

All three defendants filed motions to dismiss the Indictment on grounds that the government violated the Fifth Amendment Due Process Clause and Rule 16(d)(2) of the Federal Rules of Criminal Procedure by intentionally failing to preserve discoverable, tangible evidence in its possession that was highly material and possibly exculpatory to the defendants. In the alternative, the defendants moved *in limine* under the Due Process Clause and Rule 403 of the Federal Rules of Evidence for an order precluding the government from in-

troducing at trial any evidence in the form of expert reports, studies, or other documents derived from evidence that the government intentionally failed to preserve. Included with the motion was defendants' motion for an evidentiary hearing.

### A. Magistrate's Decision

The Magistrate denied defendants' motion for an evidentiary hearing and instead found that the following undisputed facts supplied the necessary background for resolution of defendants' motion.

From 1979 through 1985, under various government contracts, Lov–It Creamery processed bulk butter owned by the government and meant for use in various federal facilities and federally supported programs. Under these contracts, Lov–It Creamery processed the butter from 64–point bulk form into 1–pound "prints" or packages, packed them into 1–pound packages, and returned the butter packed in cases to the government. By contract, each case processed is required to contain a new weight of at least 35.96 pounds of butter. In general, each lot of butter contains approximately 1,067 cases.

On August 25, 1985, United States Department of Agriculture Inspector J. Stuck weighed 40 cases of butter from a lot of 1,064 cases processed at Lov–It Creamery under Contract No. 13803. Weighings, done at Newark, New Jersey, revealed an average net butter weight of 34.84 pounds per case. A separate test weighing of cases from Contract No. 16820, also processed by Lov–It Creamery, revealed an average net weight of 34.7 pounds per case. None of the cases in either lot were preserved, and the government does not allege these weighings were based on any scientifically planned sampling method.

In October of 1985, Dr. Jeremy Wu, United States Department of Agriculture's Chief of Statistics Branch, developed what he considers to be a statistically valid sampling method for test weighings. Consistent with that method, lots of butter processed under contract No. 18521 were selected for weighings at nine cold storage warehouses in eight states. Test weighings, completed November 8, 1985, revealed that 45 of the sample groups of cases weighed had a net butter weight of over 35.96 pounds, while 29 of the sample groups had a net weight under that figure. Following the completion of the test weighings, the butter sampled was released for usual distribution with directions that one underweight case be preserved at each of four warehouses. Apparently, only two of those cases remain in existence. The government has provided the defendants with discovery materials describing the formulation of the sampling method for the test weighing on Contract No. 18521, including materials showing how, when, and by whom the weighing was done and the weighing results.

Reports from the United States Department of Agriculture, Stabilization and Conservation Service, reveal uncommitted inventories of butter held by the Commodity Credit Corporation during the fourth quarter of 1985 were as follows: 129.9 million pounds as of October 31, 1985; 126.2 million pounds as of November 30, 1985; and 126.4 million pounds as of December 31, 1985.

Though not explicitly found as an undisputed fact, the Magistrate's recommendation also found that the government has conceded that "the distribution of the cases of butter places it [the government] in the position of conceding those case were not underweight." Magistrate's Recommendation at 18.

Based on these facts, the Magistrate found no Fifth Amendment due process violation. Relying on the standards put forth in *Arizona v. Youngblood*, —— U.S. ——, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), and two Seventh Circuit cases construing *Trombetta*,[2] the Magistrate held that a Due Process violation was established with regard to the

---

**2.** The two Seventh Circuit cases were *United States v. Zambrana*, 841 F.2d 1320, 1341–42

(1988) and *United States v. Nesbitt*, 852 F.2d 1502, 1520 (1988).

government's failure to preserve evidence only if: (1) there was bad faith on the part of the government; (2) the destroyed evidence was material in the sense that it possessed exculpatory value that was apparent before the evidence was destroyed; and (3) the destroyed evidence was material in the sense that it was of such a nature that defendants would be unable to obtain comparable evidence by other means. The Magistrate held that in the case at hand: (1) the facts did not show bad faith on the part of the United States in preserving only a few underweight cases of butter and not preserving any overweight cases; (2) the inference that some of the cases of butter were incorrectly weighed is mere speculation and conjecture; and (3) defendants had alternative methods of establishing their innocence other than weighing all the cases of butter or reweighing those actually weighed by the government. The Magistrate found that comparable evidence could be obtained through weighings made of the butter before it left Lov–It Creamery, through a challenge to the statistical validity of the governments' sampling method, and through an argument to the finder of fact that a weighing of all the butter might have been exculpatory.

The Magistrate further found that defendants' alternative motion under Rule 403 was more properly addressed by the trial judge and, as such, was premature.

He therefore recommended that this Court deny defendants' motion.

### B. Objections

Lov–It Creamery filed various objections to the Magistrate's recommendation, contending (1) the Magistrate erred in making the factual finding that the government's sampling and test-weighing of a quantity of butter comported with a purportedly scientific sampling method specified by the government's statistical expert; (2) the Magistrate erred by relying on what he viewed as a concession by the government that the butter not preserved met the contractually specified weight requirement; (3) the Magistrate applied an incorrect legal standard by failing to find that proof that the evidence had apparent exculpatory value at the time it was destroyed is sufficient to create an inference of bad faith on the part of the government; (4) the Magistrate applied an incorrect legal standard in placing the burden on the defendants of proving the bad faith element; (5) the Magistrate mistakenly concluded that defendants had available alternative sources of proof; (6) the Magistrate mistakenly concluded that the exculpatory value of the destroyed evidence was mere speculation; (7) the Magistrate erred in not considering defendants' alternative request for relief under the Due Process Clause; and (8) the Magistrate erred in failing to hold a pretrial evidentiary hearing on defendants' alternative motion under Rule 403 of the Federal Rules of Evidence.

### C. Rulings of the Court

The Court begins with a consideration of the first two objections, which go to the Magistrate's factual findings. Lov–It contends the Magistrate erroneously determined that the government's sampling and testing was scientifically sound. Defendants contend that the testing was not scientifically sound and was thus unreliable. The Court notes, however, that the Magistrate found only that the government's statistical expert "developed what he considers to be a statistically valid sampling method for test weighings." Magistrate's Recommendation at 12. Lov–It Creamery's objection is mooted by the Court adding the following to the factual record of this motion.

Defendants contend that the government's sampling is unreliable in part because the actual sampling fails to comply with specifications in the design of the sampling study. Furthermore, Philip L. Smith, a statistical expert, submitted an affidavit wherein he states that based on a review of the test weighing documents provided by the government in this case, it is impossible to draw any statistically valid inferences as to the average weight of butter processed by Lov–It Creamery from 1979 through 1983. According to Smith, the statistical technique used by the

government "is as unreliable a statistical technique for inferring the contract total weight as it would be to select ten boys from a Milwaukee third grade class to demonstrate the average height of males in America is less than four feet."

Lov–It Creamery also argues that the Magistrate erred in relying on a government concession that the cases of butter not preserved met the contractually specified weight requirements. The Court agrees that the Magistrate misinterpreted the government's statement. At page 25 of its brief in response to pretrial motions, the government states, "To the extent that the butter distributed was found to be of adequate weight, the government is in the position of conceding that[;] so the defendants' point is made without the need for the butter." In light of the government's intended use of a statistical expert, the government obviously was referring only to those cases of butter that had been weighed and found to be of proper contractual weight. In essence, the only "concession" of the United States is that it properly weighed those cases of butter that were found to be of a contractually proper weight.

The confusion on this point seems to stem from the peculiar manner in which the United States presented its defense to this motion. In accordance with the standing Pretrial Order used for criminal cases in this District, defendants attempted to compile a statement of uncontested and contested issues of fact. The United States refused to stipulate to many of the facts that defendants felt were relevant to a determination of this motion. *See* Statement Regarding Evidentiary Hearing on Motion to Dismiss or, in the Alternative, to Suppress Evidence. But in its response brief, the government accepted many of the facts for which defendants sought stipulations. Furthermore, the government added facts that were not raised in the Statement Regarding Evidentiary Hearing.

The Magistrate apparently used the brief of the government to determine the undisputed facts. This procedure, which required the Magistrate to compare every fact stated by the government in its brief with those listed as contested facts in defendants' Statement, strikes at the very purpose of Rule 2 of the Pretrial Order, which is to expedite the Magistrate's consideration and resolution of motions requiring an evidentiary hearing.[3] Either the facts are accepted or they are disputed. If they are disputed, the Magistrate can determine if the disputed facts require an evidentiary hearing. The Court cannot understand why the government struck such a muddled posture in this case. Counsel *should endeavor to avoid this type of motion practice in the future.*

As discussed below, the Court finds that the clarification of the factual record with regard to Lov–It Creamery's first two objections does not affect the ultimate resolution of the motion.

 Turning to the objections that go to the legal standard used by the Magistrate: Relying on language in the only footnote of *Arizona v. Youngblood,* —— U.S. ——, 109 S.Ct. 333, 102 L.Ed.2d 281 Lov–It Creamery first contends that the Magistrate was required to find that proof that evidence had apparent exculpatory value at the time it was destroyed is sufficient to create an inference of bad faith. The footnote referred to by Lov–It Creamery is as follows:

> In this case, the Arizona Court of Appeals relied on its earlier decision in *State v. Escalante,* 153 Ariz. 55, 734 P.2d 597 (1986), holding that " 'when identity is an issue at trial and the police permit destruction of evidence that *could eliminate* a defendant as the perpetrator, such loss is material to the defense and is a denial of due process.' " *Arizona v. Youngblood,* 153 Ariz. 50, 54, 734 P.2d 592, 596 (1986), *Escalante, supra,* [153

**3.** Rule 2 of the Pretrial Order states in part: Prior to filing a motion [which may require an evidentiary hearing], counsel for the parties are directed to meet and to determine whether there is a dispute regarding material facts or issues of law in connection with said motion. The parties shall make every possible effort in good faith to stipulate to all facts or issues of law the truth and existence of which is not contested.

Ariz.] at 61, 734 P.2d at 603 (emphasis added). The reasoning in *Escalante* and the instant case mark a sharp departure from [*California v.*] *Trombetta* in two respects. First, *Trombetta* speaks of evidence whose exculpatory value is "apparent." 467 U.S., at 489 [104 S.Ct. at 2534]. The possibility that the semen samples [at issue in this case] could have exculpated respondent if preserved or tested is not enough to satisfy the standard of constitutional materiality in *Trombetta.* Second, we made clear in *Trombetta* that the exculpatory evidence must be apparent "*before* the evidence was destroyed." *Ibid.* (emphasis added). Here, respondent has not shown that the police knew the semen samples would have exculpated him when they failed to perform certain tests or to refrigerate the boy's clothing; this evidence was simply an avenue of investigation that might have led in any number of directions. The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value at the time it was lost or destroyed. *Cf. Napue v. Illinois,* 360 U.S. 264 [79 S.Ct. 1173, 3 L.Ed.2d 1217] (1959).

109 S.Ct. at 336–37 (footnote). The Court does not read this footnote as creating a rule that if evidence has apparent exculpatory value at the time it is lost or destroyed, then an inference of bad faith arises. The significance of the footnote is to emphasize that the measure of the exculpatory value of the evidence must be made with reference to the time it is destroyed, not, for example, after other evidence is uncovered that may change the exculpatory nature of already-destroyed evidence. How law enforcement personnel view the evidence at the time it is destroyed is certainly relevant to whether there was bad faith. *Arizona v. Youngblood,* 109 S.Ct. at 337. But a *prima facie* showing of bad faith is not established simply because apparent exculpatory evidence was destroyed. Law enforcement personnel do not have "an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular case." *Id.* Furthermore, Lov–It Creamery's interpretation of *Arizona v. Youngblood* would have the courts find bad faith even if the exculpatory evidence were destroyed through negligence. Such a rule would be directly contrary to the holding of *Arizona v. Youngblood. See* 109 S.Ct. at 337 (failure of police to preserve evidence can "at worst be described as negligent" and, therefore, there was no Due Process Clause violation).

■ Next, Lov–It Creamery argues that the Magistrate improperly construed *Arizona v. Youngblood* as placing the burden of proof on defendants with respect to establishing the bad faith element. The Court disagrees. The plain language of *Arizona v. Youngblood,* while not using the precise phrase "burden of proof", clearly places that burden on the defendant:

> We think that requiring a defendant to show bad faith on the part of the police both limits the the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of police, failure to preserve potentially useful evidence does not constitute a denial of due process.

109 S.Ct. at 337.

Lov–It Creamery further argues that the Magistrate erred in concluding that defendants had available to them as an alternative source of proof the weighings performed routinely at Lov–It Creamery immediately prior to shipment of the government-owned butter. Lov–It Creamery contends that this finding is flawed because the accuracy of Lov–It Creamery's weighings will be challenged by the United States at trial.

When the government's case in chief will consist largely of evidence that the routine weighings were tainted by tampering with the scales used, it will do the defendants little good to put these weigh-

ings into evidence as proof that they were conducted accurately. As a matter of law, physical evidence is entitled to greater weight than testimonial evidence, and the only physical evidence available in this case, at least until it was destroyed by the government, was the butter itself.

Objections of Defendant Lov–It Creamery at 1536–37.

The Court is unpersuaded by this reasoning. First, in light of the holding of *Arizona v. Youngblood* regarding the failure to preserve only potentially useful evidence, it is questionable as to whether, in the absence of bad faith, the Magistrate was required to make a finding that defendants had alternative means of establishing their innocence. *See* 109 S.Ct. at 337. Second, if the jury were to believe that Lov–It Creamery's scales had in fact been altered by defendants, then it would be the actions of defendants, not of the government, which would have prevented defendants' from availing themselves to the alternative means of establishing innocence. Third, the Magistrate also found that defendants could establish their innocence through other means as well, including (1) the use of the government's test that revealed that more cases of butter were above the required net weight average of the contract than were below, (2) a challenge to the statistical validity of the government's sampling method, and (3) an argument to the jury that a weighing of all the butter might have been exculpatory.

■ The next argument advanced by Lov–It is that the Magistrate erred in concluding that the defendants had offered nothing more than speculation and conjecture that the evidence destroyed was probably exculpatory. Lov–It Creamery argues that since the government's own sampling indicated that more cases than not met the contractual requirement, an inference arose for each individual case of butter that it was more likely than not to meet the weight requirement. According to Lov–It

Creamery, the conclusion that must follow is that every box no longer in the government's possession was likely to be the proper weight and was thus likely to be exculpatory.

The logic of this argument, however, misconstrues the inference that the United States seeks to draw from its sampling and, furthermore, confuses the nature of what would constitute exculpatory evidence in this case. The sampling conducted by the government found that out of 74 sample groups of cases of butter, 29 were underweight. The inference the government will seek to establish from this sample is that the same percentage of cases were underweight for all of Contract No. 18521. *See* Response of United States to Pretrial Motions of Defendants at 20. The fact that a particular case of butter that no longer is in existence was more likely than not to meet the contractual weight requirements will not be exculpatory by itself since the weight of a single case will not refute the government's statistical analysis. The fact that a particular case of butter that no longer is in existence undisputedly met the contractual weight requirement also will not be exculpatory by itself. The actual cases of butter are exculpatory only if a sufficient amount were preserved in order to definitively establish that the government's sampling—and the inferences sought therefrom—were in error. The fact that the actual presence of a certain number of cases (or, for that matter, all the cases) would have refuted the government's sampling is mere speculation. Also, as found by the Magistrate, a challenge to the government's statistical analysis can be made through a challenge to the validity of the government's sampling. As seen from the defendants' submission of an affidavit of Philip Smith challenging the government's sampling, defendants apparently intend to pursue this issue at trial.

Moreover, the Court would add that the offense charged in this case is conspiracy to willfully steal, remove, or convert butter owned by the Commodity Credit Corporation.[4] The offense of conspiracy does not

---

4. While the Indictment charges the offense with the conjunctive "and", the wording of 15 U.S.C.

§ 714m(c) uses the disjunctive "or".

require that the defendants actually achieve the intended result. *See* Seventh Circuit J.I. 5.11. Thus, since the question of the actual weight of the butter is not dispositive of this case, the nature of the alleged constitutional violation does not bear directly on defendants' Due Process protections under the Fifth Amendment. *Cf. Arizona v. Youngblood,* 109 S.Ct. at 334–35 (Blackmun, J., dissenting) (unpreserved physical evidence would have gone to key issue of identification).

Based on this reasoning, as well as that put forth by the Magistrate in his recommendation, the Court finds no basis for a violation of defendants rights under the Due Process Clause of the Fifth Amendment.

■■■ Two objections of Lov–It Creamery remain under this motion. First, Lov–It Creamery argues that the Magistrate failed to consider whether the Due Process Clause required suppression of the government's sample weighings of the butter. In light of the Court's finding that no Due Process violation occurred, the Court finds no merit in this argument. Second, Lov–It Creamery contends that a pretrial hearing should be held in order to determine whether the government's evidence should be excluded under Rule 403 of the Federal Rules of Evidence. That rule provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

Lov–It Creamery states that a pretrial hearing is necessary so that it may present testimony concerning the probative value of the no longer existing butter and testimony concerning the reliability of the sampling methods employed by the government. Objections of Defendant Lov–It Creamery at 1537–38. But the government's evidence on the sampling would be excluded under Rule 403 only if the proba-

tive value is substantially outweighed by the danger of prejudice or other factors listed by the Rule. A pretrial hearing presenting the testimony described by Lov–It Creamery would not seem to form a basis for excluding the government's evidence under Rule 403. On the basis of the record before the Court, the government's sampling appears to have probative value. *See* Rule 401 of the Federal Rules of Evidence. Defendants' proffer does not establish that this probative value would be substantially outweighed by the danger of unfair prejudice or the other factors listed in Rule 403. At best, Lov–It Creamery establishes a battle of experts common to civil cases. The Court, on the basis of the record now before it, does not find the need for a pretrial hearing on the alternative motion in limine. Defendants may renew this motion at trial.

Therefore, the Court will deny the motions of all defendants to dismiss the Indictment for the failure of the United States to preserve evidence and will deny the alternative motions to suppress introduction of evidence concerning the government's sample weighings of cases of butter.

## VIII. *Indictment Surplusage*

■■■ Roger Jahnke filed an appeal of the order of the Magistrate denying the motion of all defendants to strike prejudicial surplusage in the Indictment. Defendants' motion, brought under Rule 7(d) of the Federal Rules of Criminal Procedure, sought to strike the 42 overt acts listed in the Indictment as conduct taken in furtherance of the alleged conspiracy.[5]

In denying the motion, the Magistrate relied on the following interpretation of Rule 7(d) by the court in *United States v. Climatemp, Inc.,* 482 F.Supp. 376, 391 (N.D.Ill.1979), *aff'd,* 705 F.2d 461 (7th Cir.), *cert. denied,* 462 U.S. 1134, 103 S.Ct. 3116, 77 L.Ed.2d 1370 (1983):

> The inclusion of clearly unnecessary language of an indictment that could serve only to inflame the jury, confuse

**5.** Rule 7(d) provides:
The court on motion of the defendant may strike surplusage from the indictment or in-
formation.

the issues, and blur the elements necessary for conviction under the separate counts involved surely can be prejudicial. *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir.1971); *United States v. Spock*, 416 F.2d 165 (1st Cir.1969); *United States v. Bufalino*, 285 F.2d 408 (2nd Cir.1960). However, if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant). *United States v. Chas. Pfizer & Co.*, 217 F.Supp. 199 (S.D.N.Y.1963), *rev'd on other grounds*, 426 F.2d 32 (2nd Cir.1970). Magistrate's Recommendation at 40–41. The Magistrate found that the overt acts of the Indictment of this case provided evidentiary support for the existence of a conspiracy.

The Court agrees. The implication that Roger Jahnke signed false certificates, the fact that he received large sums of money above his salary, and the fact that David Jahnke directed government butter to be reboxed in Lov–It Creamery boxes, if proved, all would evidence the existence of a conspiracy to convert government butter to the use of Lov–It Creamery. The Magistrate's order denying the motion to strike surplusage in the Indictment will be affirmed.

### IX. *Discovery*

Remaining are the appeals of Lov–It Creamery and Roger Jahnke to the Magistrate's order denying defendants' motion for discovery and to compel production of exculpatory evidence. In their original motion, defendants made 13 enumerated requests. The following lists the particulars of each request and the evaluation of the Magistrate.

Request No. 1 sought any relevant written or recorded statements made by any defendant that are in the custody or control of the government. The Magistrate viewed the request as aimed at reports prepared by the government during the course of an Internal Revenue Service (IRS) investigation into the potential tax liabilities of defendants. The tax investigation paralleled the investigation of this case, but did not result in any charges. The Magistrate denied the request, finding that statements in the IRS file were not relevant to the Indictment of this case and were thus not covered by Rule 16(a) of the Federal Rules of Criminal Procedure.

No. 2 sought the substance of any oral statement that the government intends to offer at trial. The Magistrate construed this request as also seeking access to the IRS file and denied the motion for that reason.

No. 3 sought agents' notes underlying all witness statements previously provided. The Magistrate denied the request on the basis of Rule 16(a)(2) and the Advisory Committee Note thereto.

Nos. 4 and 5 sought identification of all co-conspirators, as well as testimony, witness statements, and agents' notes or summaries of interviews with any co-conspirators on any subject at any time material to this case. The Magistrate considered the naming of co-conspirators a moot issue in light of his decision to grant defendants' motion for a bill of particulars as to co-conspirators. He further found that defendants had not established their entitlement to the other matters of the requests and denied the requests on that basis.

No. 6 sought disclosure of the entire IRS criminal investigation file regarding Lov–It Creamery. The Magistrate denied the request, finding that the production of an entire file was not authorized by Rule 16 or by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

No. 7 sought all documents prepared by the government in connection with any IRS criminal investigation of any of the defendants. This request was denied as overbroad and beyond the scope of discovery.

No. 8 sought documents relating to government agents' interviews or investigations regarding Lov–It Creamery's compliance with government contracts or federal statutes during the period of the alleged conspiracy. Based on the government's assertion that the information

sought by this request does not exist, the Magistrate did not rule on the request.

No. 9 sought all documents concerning complaints, comments, or inquiries by any users of Commodity Credit Corporation butter about the weight of the butter processed since 1979. In response, the government stated that any such records in its possession had been made available to defendants, but further states that it would not make inquiry of the United States Department of Agriculture regarding any similar records. The Magistrate denied the request, holding that the government has no obligation to generate exculpatory material and noting that defendant may have been able to obtain such records directly from the Department of Agriculture.

Nos. 10 through 12 sought materials concerning the government's 1985 test weighings. The government stated that it would voluntarily comply with these requests and the Magistrate issued no order.

No. 13 sought an affirmance or denial of the existence of electronic surveillance or any evidence obtained pursuant to process, including search warrants, arrest warrants, administrative orders, or subpoenas. The Magistrate denied the request, finding that no authority required that the government disclose the source of otherwise discoverable material. The Magistrate further found that the government was only obligated to affirm or deny the utilization of electronic surveillance when a defendant makes an assertion that such surveillance was used. Since no such assertion was made by defendants, the remainder of the request was denied.

The Magistrate prefaced his rulings on the requests by noting that the government had indicated that it was pursuing its "open-file" discovery policy in this case, pursuant to which defendants had been provided with the written statements, reports of interviews, and transcripts of grand jury testimony of approximately 32 witnesses. Defendants had also been given numerous reports and official documents of the United States Department of Agriculture memorializing events and transactions related to the investigation of

this matter. The government further advised the Magistrate that it would attempt to obtain and provide the defendants with certain additional accountings, reports, and records which may have been generated and maintained during the investigation.

Roger Jahnke's appeal attacks the Magistrate's rulings on all the requests, except Nos. 10 through 12. The appeal of Lov–It Creamery incorporates the arguments of Roger Jahnke.

Before considering the particular aspects of Roger Jahnke's appeal, the Court outlines the parameters of criminal discovery.

District courts have wide discretion within the rules to determine the manner and course of discovery for a criminal case. *United States v. Valona*, 834 F.2d 1334, 1340 (7th Cir.1987). A district court's limitation on the manner and course of discovery will be reversed by the appellate court only by a showing that the limitation is improvident and prejudices a party's substantial rights. *Id.* Although there is no general right to discovery in a criminal case, the discovery by the defendant of certain evidence in the possession of the prosecution is mandated by Rule 16 of the Federal Rules of Criminal Procedure, as well as the Due Process Clause. *See United States v. Napue*, 834 F.2d 1311, 1316 (7th Cir.1987). For example, under the Due Process Clause, prosecutors are required to disclose evidence that is material to either guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). A defendant's request for *Brady* Material, however, does not require a prosecutor to wade through all government files in search of potentially exculpatory evidence. *See United States v. Navarro*, 737 F.2d 625, 631 (7th Cir.), *cert. denied*, 469 U.S. 1020, 105 S.Ct. 438, 83 L.Ed.2d 364 (1984) (mere speculation by defendant regarding relevance of undisclosed material is insufficient to require remand to court for *in camera* review); *see also United States v. Robinson*, 585 F.2d 274, 281 (7th Cir.1978) (*Brady* request pertaining to 10,000 pages of government documents will not be reviewed by court

unless defendant identifies with reasonable particularity the evidence to be considered).

■ Request Nos. 1, 2, 6 and 7 deal in part with access to the IRS criminal investigation file. Roger Jahnke's appeal argues that material in this file may be relevant or material to this case because the IRS investigation involved the same conduct alleged in this case. In particular, defendants put forth the following theory as to how the IRS file may contain exculpatory material: If defendants did indeed steal government butter for financial gain, as alleged in this case, then the financial records of Lov–It Creamery would have reflected a profit from the resale. If the records did not reflect the proceeds of resales, then Lov–It Creamery would have faced criminal tax liability. But, since the IRS criminal investigation resulted in no charges, it can be assumed that defendants fully and accurately reported all their income. Evidence of an accurate reporting would be exculpatory because the absence of attempts to conceal this allegedly illegal income demonstrates the lack of criminal intent. Defendants also assert that IRS records also would contain exculpatory materials if they failed to show an inventory imbalance from the butter allegedly stolen.

While the Court is not persuaded by defendants' theory that the IRS file necessarily contains exculpatory material (certainly there may have been a multitude of reasons why criminal charges were not forthcoming), the Court is persuaded that defendants have made a sufficient showing that their theory is more than mere speculation. The government's response to the discovery motion was simply a bare statement that had no duty whatsoever to examine a file regarding a "discrete investigation." Response of United States at 49. No argument is given in response to defendants' claims regarding the overlapping nature of the investigation. Furthermore, no explanation is given as to why the separate file would contain no information relevant to this case or why, in due diligence, the government would not be able to review the file for information that may be relevant to this case.

The Magistrate's ruling on this point stated only that the information in the IRS file was not relevant because it did not relate to the charges in this case. Given the arguments advanced by defendants and the bare response of the government, the Court finds the ruling an abuse of discretion. The Court will modify the orders regarding Request Nos. 1, 2, 6, and 7 and will order the government to review the IRS criminal file for material contained therein that would be relevant and material to this case within the parameters of Rule 16 and *Brady v. Maryland.*

Roger Jahnke makes other arguments with regard to his objections on Request Nos. 2, 3, 4, 5, 8, 9 and 13.

On No. 2, Jahnke argues that the Magistrate's assumptions regarding access to the IRS file overlooked the requirement of Rule 16(a)(1)(A) that the government permit the defendant to inspect and copy "the substance of any oral statement which the government intends to offer at the trial made by the defendant before or after arrest in response to interrogation by any person then known to the defendant to be a government agent." To the extent such statements were not included by the government in the material already transmitted to defendants, the government has made no showing as to why an order should not be issued. Therefore, the Court will reverse the Magistrate and order the government to comply with Request No. 2 within the parameters of Rule 16(a)(1)(A).

■ On No. 3, Jahnke argues that any privilege regarding the agents' note has been waived by partial disclosure. Furthermore, the privilege cannot act to negate the government's obligations to provide Brady material. The Court, however, is unpersuaded by these arguments. Rule 16(a)(2) clearly exempts from discovery the investigatory notes of a government agent. The waiver of privilege argument has no merit in light of the fact that the rules will always require the "partial" disclosure described by defendants. The Magistrate will be affirmed on his ruling on this request.

On Nos. 4 and 5, Jahnke argues that the Magistrate erred in not requiring the production of all statements of co-conspirators. But since the disclosure of such statements rests within the sound discretion of the court, *United States v. Disston,* 612 F.2d 1035, 1037–38 (7th Cir.1980), and since the only argument defendant put forth for the need for such statements is to avoid unnecessary surprise and delay, which would be present in every case, the Court sees no error in the Magistrate's decision. The Court would add that it is not clear from the record whether these statements were included in the materials already turned over to defendants by the government.

On No. 8, Jahnke argues that the Magistrate abused his discretion by issuing no order. No order was issued, however, because the government asserted that it was aware of no such materials. Since the rules of discovery do not require prosecutors to go on fishing trips for exculpatory materials, the Court will affirm the Magistrate's failure to issue an order based on the government's assertion.

On No. 9, Jahnke argues that the government has made no showing as to why it could not simply ask the Department of Agriculture whether any complaints had been made as to the weight of Commodity Credit Corporation butter. But, as pointed out by the Magistrate, defendants may be able to obtain such information on their own. The Court is persuaded that defendants have not made a sufficient showing as to why the government should generate exculpatory material for defendants or, for that matter, do defendants' leg work. The Magistrate will be affirmed on No. 9.

Finally, on No. 13, Jahnke argues that the fact that electronic surveillance was used, but that it uncovered nothing, would be in itself exculpatory information that should be disclosed to defendants. This argument, though, makes the unique contention that a lack of information is necessarily exculpatory. Such a contention is not inherent in *Brady* or Rule 16. Absent a more detailed justification by defendants, the Magistrate will be affirmed.

Therefore, based on a review of the particular requests of the motion for discovery and to compel production of exculpatory evidence, the Court will affirm in part, reverse in part, and modify in part the order of the Magistrate.

### X. *Summary*

Accordingly, based on the decision above:

1. The Court finds that the maximum penalty faced by Lov–It Creamery for a violation of 15 U.S.C. § 714m would be a fine under 18 U.S.C. § 3623. Absent a calculation under section 3623(c)(1), that amount would be $500,000. Furthermore, the Court finds that Lov–It Creamery may face probation under 18 U.S.C. § 3651 and that the probation may include restitution. The Court also finds that the interest of justice do not warrant allowing Lov–It Creamery leave to change its plea to nolo contendere. Therefore, the Court hereby GRANTS IN PART and DENIES IN PART Lov–It Creamery's motion for determination of maximum sentence and subsequent leave to change plea.

2. The Court further finds that a severance of the trials of Lov–It Creamery and David Jahnke from the trial of Roger Jahnke is not warranted by the circumstances of the case as they stand at present. Defendants, however, may renew their motions at trial where the Court may more accurately evaluate the factors that might warrant severance. Therefore, the Court hereby DENIES WITHOUT PREJUDICE the motions of Love–It Creamery and David Jahnke for severance.

3. The Court further finds that the Indictment properly sets forth the elements of a conspiracy by a corporation. Therefore, the Court hereby DENIES Lov–It Creamery's motion to dismiss the Indictment on the grounds that the Indictment fails to set forth the elements of conspiracy by a corporation.

4. The Court further finds that the Indictment supplies defendants with sufficient information to enable them to prepare an adequate defense and to avoid the risk of subsequent prosecution arising out of the same operative facts. Therefore, the

Court hereby DENIES defendants' motion to dismiss the Indictment.

5. The Court further finds the government's failure to preserve evidence did not violate the Due Process Clause of the Fifth Amendment. Therefore, the Court hereby DENIES defendants' motion to dismiss the Indictment for failure to preserve evidence. The Court also hereby DENIES WITHOUT PREJUDICE defendants' alternative motion to suppress evidence.

6. The Court further finds that the Indictment contains no prejudicial surplusage Therefore, the Magistrate's order denying defendants' motion to strike prejudicial surplusage is hereby AFFIRMED.

7. Finally, the Court finds that defendants' were entitled to certain discovery requests not granted by the Magistrate. Therefore, as more fully set forth herein, the Court hereby AFFIRMS IN PART, REVERSES IN PART, and MODIFIES IN PART the Magistrate's order denying defendants' motion for discovery and to compel production of exculpatory evidence.

SO ORDERED.