**UNITED STATES of America**

v.

**Jeffrey Paul GORDON.**

**Jeffrey Paul GORDON**

v.

**UNITED STATES of America.**

**Criminal No. 92–386.**

**Civil Action No. 97–2757.**

United States District Court,
E.D. Pennsylvania.

Oct. 1, 1997.

---

Ewald Zittlau, Asst. U.S. Atty., Philadelphia, PA, for U.S.

Jeffrey M. Lindy, Philadelphia, PA, for Jeffrey Paul Gordon.

### *MEMORANDUM*

DALZELL, District Judge.

After five years of reflection, Jeffrey Paul Gordon has reconsidered the wisdom of his pressing his claims of innocence upon the jury that convicted him. Specifically, Gordon now finds constitutional fault in his trial counsel's failure to urge upon him a non-trial disposition of his case.

Because Gordon's contention is, as far as we can tell, unprecedented in this or any other Circuit, we will address it at some length.

*Background*

On July 1, 1992, a grand jury returned an indictment against Gordon, a pharmacist. Gordon was charged with two counts of possession with intent to distribute and dispense controlled substances without a proper prescription, in violation of 21 U.S.C. § 841(a)(1). The indictment charged Gordon with unlawfully dispensing, "without a legitimate medical purpose and outside of the usual course of professional practice, that is, without a valid and proper prescription, approximately 9,000 Dilaudid (4 mg.) tablets" and "2,000 glutethimide (.5 gm.) tablets."

On the third day of his four-day jury trial that October, Gordon testified in his own defense and at length protested his innocence. Pet. Mem. at p. 7, n. 4. Besides insisting on his actual innocence, Gordon in his testimony depicted himself as the victim of a burglary—including details of physical violence against him—that resulted in the theft of the 9,000 Dilaudid and 2,000 glutethimide tablets. On October 29, 1992, the jury returned a verdict of guilty on both counts of the indictment.

At his sentencing on January 28, 1993, Gordon reasserted his innocence. Pet. Mem. at p. 7, n. 4. We sentenced Gordon to 121 months imprisonment, three years supervised release, a $17,500 fine, and a $100 special assessment.

On September 9, 1993, our Court of Appeals upheld the conviction and affirmed the Judgment of this Court. *United States v. Jeffrey Paul Gordon*, No. 93–1103, 8 F.3d 813 (3d Cir. Sept.9, 1993). Gordon filed a petition for rehearing *en banc* on September 22, 1993, which the Court of Appeals denied. *United States v. Jeffrey Paul Gordon*, No. 93–1103 (3d Cir., Oct.7, 1993).

Pursuant to 28 U.S.C. § 2255, Gordon now moves to vacate, set aside, or correct his sentence. Gordon contends that his trial counsel was ineffective because he did not advise him of his comparative sentence exposure under the Sentencing Guidelines between standing trial and entering a *nolo contendere* or an *Alford* plea, and did not explain the alleged "benefit" of entering such a plea.[1] For the reasons set forth below, we will deny Gordon's motion.

*Evidentiary Hearing*

The decision as to whether to hold an evidentiary hearing on a § 2255 motion is within the discretion of the trial court, which must first determine whether the files and records of the case "plainly" show "that the movant is not entitled to relief." *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts; *see also United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir.1994); *United States v. Day*, 969 F.2d 39, 41–42 (3d Cir.1992). As will be seen, because the record is sufficiently plain, and the essential facts cannot be disputed, we find that no evidentiary hearing is warranted.

*Legal Discussion*

A. *Standard of Review*

When considering a claim of ineffective assistance of counsel, we are bound by the two-pronged test that the Supreme Court formulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (i) whether the attorney's performance fell "below an objective standard of reasonableness", thus rendering the assistance so deficient that the attorney did not function as "counsel" as the Sixth Amendment guarantees, *see id.*, at 687–88, 104 S.Ct. at 2064–65, and (ii) whether the attorney's ineffectiveness prejudiced the defense such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 694, 104 S.Ct. at 2068; *see also Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir.), *cert. denied*, 512 U.S. 1230, 114 S.Ct. 2730, 129 L.Ed.2d 853 (1994).

Habeas corpus relief is generally available only in "exceptional circumstances" to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. *See Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

B. *Gordon's Argument*

Gordon contends that his prior counsel, F. Emmett Fitzpatrick, Esquire, failed to advise him that he could plead *nolo contendere*[2] or enter an *Alford*[3] plea prior to trial. Pet.

---

1. In his § 2255 motion, Gordon does not contest his trial counsel's "able and competent" representation at trial, see Pet. Mem. at p. 4, n. 1.

2. Under Fed.R.Crim.P. 11(b) a "defendant may plead *nolo contendere*." Such a plea may only be entered with consent of the Court. *Id.*

3. A form of plea named after *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162

Mem. at p. 4–5. Furthermore, Gordon asserts that Mr. Fitzpatrick did not advise him that a *nolo contendere* plea or an *Alford* plea, when combined with acceptance of responsibility, could possibly have led to a three-level downward adjustment from the Sentencing Guidelines offense level.[4] Pet. Mem. at p. 6, 12. Gordon contends that had he been properly advised regarding such pleas, he would have waived his right to trial and entered a *nolo contendere* or an *Alford* plea. Pet. Mem. at p. 7.

### C. Analysis

Gordon's ineffectiveness of counsel argument does not withstand scrutiny.

At the threshold, we note that it is factually unclear whether Mr. Fitzpatrick advised Gordon about the right to enter a *nolo contendere* or an *Alford* plea. Unsurprisingly after the passage of five years, Mr. Fitzpatrick states in his affidavit that he does not recall whether he advised Gordon about these pleas. *See* Pet. Mot. Exhibit B, ¶'s 3–4. Even assuming that Mr. Fitzpatrick did not advise Gordon of such an option, however, we still find that Gordon's motion must fail.

### (1) Does the Constitution Require Defense Counsel to Proffer Unwelcome or Unwanted Advice?

As noted in our canvass of the background of this case, throughout his trial and sentencing Gordon steadfastly protested his innocence. His testimony went beyond the bald assertion of innocence, and described an alternative scenario that depicted Gordon as the victim of a burglary of his inventory of Dilaudid and glutethimide. Thus, from aught that appears on this extensive record, there was no reason for Mr. Fitzpatrick to believe that Gordon would welcome, or even

want to hear, advice regarding any non-trial disposition of these charges that would have put Gordon in jail. Notwithstanding this reality that presented itself to Mr. Fitzpatrick, Gordon now says that the failure to canvass such possibilities took Mr. Fitzpatrick's performance below an objective standard of reasonableness under *Strickland.*

We have looked to other arbiters of constitutional reasonableness to aid us in our inquiry. We found no case which holds that an effective defense lawyer in criminal cases must offer advice on sentence-triggering pleas to a client who insists he is actually innocent of the charges against him.

At a high level of generality, of course, the Supreme Court taught us in *Strickland* that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. As Justice O'Connor explained for the Court in *Strickland,*

> Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

*Id.*

In other contexts, courts applying this general principle from *Strickland* have held that defense counsel's actions premised upon the defendant's "strategic choices" cannot be constitutionally ineffective if they are consistent with those choices. *See, e.g., Neal v. Acevedo,* 114 F.3d 803, 805–807 (8th Cir.1997) (trial counsel's failure to take actions inconsistent with defendant's alibi defense *held* not constitutionally ineffective).

■ To be sure, a defense lawyer's duty to assist the defendant make "*informed* strate-

---

(1970), under which a defendant can maintain his innocence, but admit that the Government could likely prove the charges against him.

**4.** Under U.S.S.G. § 3E1.1(a), (b) (1992), if a defendant clearly demonstrates acceptance of responsibility for his offense, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking certain enumerated steps, a court can decrease the of-

fense by up to three levels. *See* U.S.S.G. § 3E1.1(a), (b) (1992).

We have used the 1992 Sentencing *Guidelines Manual* even though the offense conduct began on May 16, 1991. We do this because (a) we used the 1992 *Manual* at sentencing, and (b) that edition was more lenient than its predecessor in that it added a one-level offense reduction under § 3E1.1 for timely notification of intention to plead. *See also* 18 U.S.C. § 3553(a)(4).

gic choices" requires the lawyer to canvass with the defendant the advantages and disadvantages of a guilty plea *if* the Government proffers a plea agreement. *See, e.g., Jones v. Murray,* 947 F.2d 1106, 1109–111 (4th Cir. 1991) (failure of defense counsel to recommend acceptance of a proffered plea agreement in a death penalty case *held* not constitutionally ineffective); *see also* III American Bar Association for Criminal Justice, Standard 14–3.2 (2d ed. 1986 Supp.).

Of course, the most important "strategic choice" any defendant must make is whether to plead guilty or not guilty. Here, Gordon's posture both to his lawyer (from aught that appears) and certainly before us and the jury went far beyond a plea of "not guilty". His assertions of actual innocence and indeed victimization could not have been more vigorously asserted. In such a context, does the Sixth Amendment in effect require Mr. Fitzpatrick to say to his client, "Yes, but"? We do not think it does.

The absence of authority considering a case like Gordon's is perhaps unsurprising. Lawyers must take clients as they find them, and the client who persists in his protestation of innocence would scarcely welcome advice from his champion that would assure his incarceration. Put another way, it stretches common sense to impose on a lawyer the affirmative duty to canvass options which the lawyer knows are directly contrary to the client's wishes. It represents an even greater constitutional leap to hold that the Sixth Amendment *requires* that the defense lawyer press such unwelcome advice on what counsel would reasonably expect to be unwilling and deaf client ears.

Given the paucity of controlling authority on this question, however, we are reluctant to base our denial of Gordon's motion solely on this logic. We therefore turn to the second *Strickland* prong, and find that, even if the Sixth Amendment *did* require Mr. Fitzpatrick to press unwelcome and unwanted advice on Gordon, there was nevertheless no legally-cognizable prejudice on this defendant.

### (2) *Is the Harm from Mr. Fitzpatrick's Non–Advice Too Speculative to Constitute Prejudice?*

█ Under the Sentencing Guidelines, a defendant may qualify for a decrease in offense levels for acceptance of responsibility if he. meets any of the factors cited in a noninclusive list in the Guidelines' application notes. *See* U.S.S.G. § 3E1.1, Application Notes 1(a)-(h) (1992).

For example, the Guidelines list as an appropriate consideration whether the defendant "truthfully admit[ted] the conduct comprising the offense(s) of conviction." U.S.S.G. § 3E1.1, Application Note 1(a). In addition, a court may also consider whether there was a "voluntary termination or withdrawal from criminal conduct," U.S.S.G. § 3E1.1, Application Note 1(b), or "voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense," U.S.S.G. § 3E1.1, Application Note 1(e), or "voluntary resignation from the office or position held during the commission of the offense," U.S.S.G. § 3E1.1, Application Note 1(f). Courts may also consider "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." U.S.S.G. § 3E1.1, Application Note 1(h).[5]

Gordon did not take, and does not now hypothesize, any of these steps necessary to demonstrate that he accepted responsibility for his actions. Instead, Gordon consistently maintained his innocence throughout the pretrial proceedings, as well as at trial, where he testified in his own defense and described his own victimization. In view of this unwavering position, even if Gordon had decided to enter a *nolo contendere* or *Alford* plea before trial, it is highly speculative that Gordon would have demonstrated any acceptance of responsibility for a crime he always said he did not commit.[6]

---

**5.** The Guidelines also note that the sentencing judge is "in a unique position to evaluate a defendant's acceptance of responsibility" and that the determination of the sentencing judge is "entitled to great deference on review." U.S.S.G. § 3E1.1, Application Note 5.

**6.** With respect to this hypothetical scenario, it is worth noting that Ewald Zittlau, the Assistant United States Attorney who prosecuted the case, has stated that he "would have objected to any entry of a *nolo contendere* plea or an *Alford* plea" in this case. *See* Government's Answer, Affidavit

Putting aside Gordon's speculations, while a reduction for acceptance of responsibility under a *nolo contendere* or an *Alford* plea is not automatically barred by the nature of the plea, such a plea is, as a general proposition, inconsistent with the acceptance of responsibility and is a relevant factor to consider when determining the sentence. Many cases outside this Circuit have come to this general conclusion, although, to be sure, all in the context of regretted *Alford* or *nolo* pleas. *See, e.g., United States v. Alexander,* 99 F.3d 1131 (table) (reported in full, Civ. No. 95–5918, 1996 WL 614789, at *1) (4th Cir. October 25, 1996) (affirming district court's denial of a reduction for acceptance of responsibility after an *Alford* plea, because such a plea "is a relevant factor to consider"); *United States v. Harlan,* 35 F.3d 176, 181 (5th Cir.1994) (affirming district court's refusal to grant a reduction in sentence for acceptance of responsibility for an *Alford* plea because of defendant's "weak story" and the fact that an *Alford* plea is a relevant factor); *United States v. Haversat,* 22 F.3d 790, 799 (8th Cir.1994) (holding that plea of *nolo contendere,* while continuing to minimize role in price fixing conspiracy, was not acceptance of responsibility needed to justify a reduction in offense level); *United States v. Boyle,* 10 F.3d 485, 490 (7th Cir.1993) (affirming district court's refusal to reduce defendant's offense level under the sentencing guidelines for acceptance of responsibility after a *nolo contendere* plea because defendant had not demonstrated any responsibility for his criminal conduct); *United States v. Tucker,* 925 F.2d 990, 992–93 (6th Cir.1991) (holding that while an *Alford* plea does not automatically bar a reduction, simply entering such a plea will not automatically entitle a defendant to a reduction absent proof that a defendant is entitled to a reduction); *United States v.*

*Rodriguez,* 905 F.2d 372, 374 (11th Cir.1990) (affirming lower court's denial of reduction of sentence for acceptance of responsibility because of a variety of factors, including defendant's *Alford* plea).

Thus, even if we assume that (1) Mr. Fitzpatrick failed to tell Gordon about *nolo contendere* or *Alford* pleas, (2) Gordon would have taken such advice and changed his plea had he known of either plea's existence, and (3a) the Government would not have objected to such a plea or (3b) we would have overruled the Government's objections and accepted the plea, there still would have been only a *possibility* that Gordon (4) could have received a three-level reduction under the Guidelines for what to this day remains invisible acceptance of responsibility. To assume that Gordon would have changed his plea merely because there was such a remote possibility of a reduction in sentence is here at best a highly speculative proposition in view of his steadfast claims of innocence throughout the course of this case until this late hour.

In his motion, Gordon relies heavily on the decision of our Court of Appeals in *United States v. Day,* 969 F.2d 39 (3d Cir.1992). In *Day,* the Court of Appeals held that the defendant's claim of ineffective assistance of counsel was facially valid because the defendant's trial counsel did not properly explain the comparative sentencing exposure between accepting a Government plea bargain offer and going to trial.[7] *See id.* at 40. *Day* differs significantly from Gordon's case. Gordon has *not* alleged that his trial counsel misinformed him about a proposed plea bargain and his potential sentencing exposure. Instead, he alleges that his trial counsel did not tell him about a potential type of plea

---

of Ewald Zittlau at ¶ 2. The Government's hypothesized objection is relevant in playing out Gordon's hypothesized scenario because Fed. R.Crim.P. 11(b) provides that:

> A defendant may plead nolo contendere only with the consent of the court. Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice.

Thus, the Government's opposition to the hypothesized plea would have been relevant to our

determination under Rule 11(b) as to whether we would consent to its entry.

7. In *Day,* the defendant rejected a plea bargain offer that would have imposed a five-year sentence because his trial counsel incorrectly told him that the maximum sentence he could receive if he went to trial was eleven years. *Day,* 969 F.2d at 40. After his conviction, defendant was sentenced as a career offender to a twenty-two year term. *See id.*

that would have created, at best, only a speculative possibility of a reduced sentence.[8] Thus, Gordon asks us to equate the palpable and material prejudice of Day's lawyer's bad advice with the triply speculative prejudice he "suffered" because of his counsel's hypothesized non-advice that he has hypothesized he—and the Government and we— would have followed to a perfect conclusion. We shall not make that equation.

*Conclusion*

Accordingly, we find that Gordon has not met the standards established in *Strickland.* Specifically, we find that even if Mr. Fitzpatrick failed to inform Gordon about the alleged "benefits" of a *nolo contendere* or *Alford* plea, such a hypothesized omission did not prejudice Gordon such that it is reasonably likely that the sentencing result would have been different for him.

*Certificate of Appealability*

 Given that the questions we have addressed here appear to be ones of first impression in this Circuit, it would materially aid the district courts and litigants in this Circuit if our Court of Appeals addressed them. As we have noted, we have not found any case outside of the regretted guilty plea context that begin to address the questions Gordon has raised. It would therefore seem to us constructive to the administration of justice in this Circuit to grant a certificate of appealability.

Unfortunately, we no longer may determine the appealability of our decisions based upon policy interests bottomed on no more than our views of what is good for the administration of justice. To the contrary, Congress very much narrowed our inquiry in these matters when it adopted the new 28 U.S.C. § 2253 as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which now provides, in relevant part, that

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an ap-

peal may not be taken to the court of appeals from—

. . . . .

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

28 U.S.C. § 2253 (1997). We cannot honestly say, in accordance with 28 U.S.C. § 2253(c)(2), that Gordon "has made a substantial showing of the denial of a constitutional right." *See also United States v. Skandier,* 125 F.3d 178 (3d Cir.1997).

In fairness to Gordon we stress again that, notwithstanding the preceding sentence, we have found no case that presents claims like Gordon's outside of the regretted guilty plea context. To that extent, therefore, his motion appears to present a question of first impression, albeit one that we believe under analogous extant authority does not make the "substantial showing" that the AEDPA requires as the predicate for a certificate of appealability.

We will therefore deny a certificate as well as the motion in the Order accompanying this Memorandum.

*ORDER*

AND NOW, this 1st day of October, 1997, upon consideration of Jeffrey Paul Gordon's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion is DENIED;

2. Gordon having failed to make a substantial showing of the denial of a constitutional right, we decline to issue a certificate of appealability; and

---

**8.** Gordon urges this Court not to limit the holding of *Day* to its facts, *e.g.* that *Day* is a plea bargain case. *See,* Pet. Mem. at p. 9. It is hard to reconcile this contention with the fact that, throughout his brief, Gordon differentiates contrary authority by arguing that the contrary cases are distinguishable from this case *because* they concern plea bargains. *See, e.g.* Pet. Mem. at p. 11, n. 6.

3. The Clerk of the Court shall CLOSE Civil Action No. 97–2757 statistically.