**UNITED STATES of America**

v.

**Patricia MCGILL**

**CRIMINAL ACTION No. 12–112–01**

United States District Court, E.D. Pennsylvania.

Signed September 11, 2015

---

Suzanne B. Ercole, Margaret M. Vierbuchen, U.S. Attorney's Office, Philadelphia, PA, for United States of America.

Robert N. Deluca, Devon, PA, for Patricia McGill.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge

Before the Court is Defendant McGill's motion to plead nolo contendere or make an *Alford* plea as to Count One of the indictment charging conspiracy to commit healthcare fraud pursuant to 18 U.S.C. § 1349. For the reasons that follow, the Court will reject the proffer of such plea.

## I. BACKGROUND

On March 21, 2012, Defendant Patricia McGill was charged by indictment with conspiring to commit healthcare fraud under 18 U.S.C. § 1349 (Count One) and substantive counts of healthcare fraud in violation of 18 U.S.C. § 1347 (Counts Two through Fourteen) in connection with her role at a Philadelphia hospice provider, Health Care Hospice, Inc. ("HCH"). ECF No. 1. Fifteen other defendants charged with various levels of involvement in the same healthcare fraud scheme previously entered guilty pleas or have been convicted at trial.[1] Defendant McGill is one of

---

1. The evidence established that participants in the scheme included: Matthew Kolodesh; Eugene Goldman; Alex Pugman, who served as director of HCH; Svetlana Ganetsky, Pugman's spouse and the development executive for HCH; Cecelia Wiley, who worked as the office manager of HCH; Richard Barber, Edward Hearn, Eugenia Roytenberg, Diana Koltman, Luda Novikov, Irina Chudnovsky, Michelle Segal, Natalya Shvets, Giorgi Oqroshidze, Alex Koptyakov, Eugenia Gottman, Angela Bagdasarova, and Anna Yakhnis, who worked as nurses at HCH; and T.J. Wiley. Kolodesh, Goldman, and Shvets were convicted at trial of healthcare fraud charges. Pugman, Ganetsky, Cecelia Wiley, Hearn, Roytenberg, Koltman, Novikov, Oqroshidze, Koptyakov, Gottman, Bagdasarova, and Yakhnis have pleaded guilty to healthcare charges based upon their roles in the scheme. *See* Gov't's Resp. Ex. 1, E. Edward Conway Aff. ¶ 11 (ECF No. 327). At the hearing on the instant motion, the Government explained

the few remaining defendants.[2]

Trial of this matter was previously scheduled to begin on September 1, 2015. However, immediately prior to the start of jury selection, Defendant's counsel made an oral motion for the Court to accept a nolo contendere plea or *Alford* plea. See Scheduling Order (ECF No. 323). Specifically, defense counsel explained that Defendant McGill was willing to admit that she aided and abetted the commission of the healthcare fraud charges set forth in Counts Two through Fourteen of the indictment, but she refused to admit that she conspired to commit healthcare fraud as charged in Count One. Based on this turn of events, this Court continued the trial until September 9, 2015, and ordered the parties to submit written briefs as to whether the Court should accept a nolo contendere plea or *Alford* plea under the circumstances of this case. *See* Scheduling Order (ECF No. 323). Both Defendant McGill and the Government have submitted such briefs, and a hearing on this motion was held on September 9, 2015.

If this case proceeds to trial, the Government contends it would prove the following facts: [3]

HCH, a for-profit hospice provider, was incorporated in 1999 under the laws of the Commonwealth of Pennsylvania. HCH was in the business of providing hospice services for patients at nursing homes, hospitals, and private residences. HCH received Medicare, Medicaid, and private insurance reimbursement for providing home care and in-facility care to purportedly terminally ill patients with life expectancy prognoses of six months or less.

Defendant McGill, a registered nurse, was employed at HCH and served as the Director of Nursing and Clinical Services commencing in or about 2005. In that capacity, she was responsible for the planning, implementation, and evaluation of HCH's hospice services in accordance with local, state, and federal regulations. Defendant McGill also supervised clinical nursing staff, which included reviewing staff documentation and patient charts to assure quality and appropriateness for hospice service and maintaining records of patient visits. Defendant McGill was supervised by the Director and owner of HCH, Alex Pugman,[4] who conceived and orchestrated a plan to defraud Medicare of approximately $16 million dollars from about January 2005 through December 2008. The scheme involved falsification of nursing notes and home health aide documentation and other records, which were reviewed by Defendant McGill.

With the above-mentioned indictment, Defendant McGill was charged with knowingly authorizing the admission and main-

that there are several additional defendants involved in this scheme who are awaiting disposition of their cases.

2. The delay in Defendant McGill's trial was due, in large part, to the fact that she challenged her competency to stand trial, and the Court continued the trial on several occasions to allow for medical evaluations of Defendant, an evidentiary hearing, and briefing on the issue. Ultimately, Defendant McGill was found competent to stand trial.

3. All facts are taken from the Government's Trial Memorandum (ECF No. 275), which Defendant acknowledges are sufficient to support a conviction of conspiracy to commit healthcare fraud.

4. Alex Pugman, also known as Aleksandr Pugachevsky, pleaded guilty to conspiracy to commit healthcare fraud in violation of 18 U.S.C. § 1349. Under the terms of his plea agreement, Pugman was required to testify as a witness for the Government. Pugman testified in the trial of Matthew Kolodesh, Crim. No. 11–0464, and Nalaya Shvets, Crim. No. 12–112–02, Defendant McGill's co-defendants. The Government plans to call Pugman as a witness in Defendant McGill's trial as well.

tenance of ineligible patients for hospice services, resulting in fraudulent healthcare insurance claims submitted by HCH totaling approximately $9,328,000, and authorizing HCH staff to falsely document more costly levels of hospice services resulting in fraudulent claims totaling approximately $325,000. ECF No. 1.

## II. LEGAL STANDARD

### A. *Nolo Contendere Pleas*

#### 1. *Federal Rule of Criminal Procedure 11 and Nolo Contendere Pleas Generally*

Under Federal Rule of Criminal Procedure 11, a defendant may plead not guilty, guilty, or nolo contendere. Fed.R.Crim.P. 11(a)(1). A plea of nolo contendere, however, requires consent of the court. *Id.* Before accepting a plea of nolo contendere, Rule 11 instructs that "the court must consider the parties' views and the public interest in the effective administration of justice." Fed.R.Crim.P. 11(a)(3). "[T]he reason for considering these factors is that nolo pleas come with various costs and benefits, and the court must ensure that in the case before it the benefits outweigh the costs." *United States v. Mancinas–Flores,* 588 F.3d 677, 682 (9th Cir.2009). Rule 11 is silent with respect to what, if anything, the court must consider before rejecting a nolo plea.

While the Third Circuit has not ruled on this issue, other courts of appeals have held that a district court has broad discretion in determining whether to accept a nolo plea and may reject the plea if it determines that accepting the nolo plea is not in the public interest. *See, e.g., Mancinas–Flores,* 588 F.3d at 682; *United States v. Buonocore,* 416 F.3d 1124, 1131 (10th Cir.2005) ("One of the most important characteristics of the plea of nolo contendere ... is that its acceptance by the court is not a matter of right of the defendant but is entirely within the discretion of the court." (internal quotation marks omitted)); *United States v. David E. Thompson, Inc.,* 621 F.2d 1147, 1150 (1st Cir.1980) ("Acceptance of a nolo plea is solely a matter of grace." (internal quotation marks omitted)); *United States v. Soltow,* 444 F.2d 59, 60 (10th Cir.1971) ("[T]he acceptance of [a nolo] plea is a matter solely within the discretion of the court."). This is consistent with the Notes of the Advisory Committee from the 1974 amendments to Federal Rule of Criminal Procedure 11, which provide that "the balancing of the interests is left to the trial judge," so long as the judge "take[s] into account the larger public interest in the effective administration of justice." Fed. R.Crim.P. 11, Advisory Comm. Note to 1974 Amend. The Advisory Committee recognized that "[t]he defendant who asserts his innocence while pleading guilty or nolo contendere is often difficult to deal with in a correctional setting, and it may therefore be preferable to resolve the issue of guilt or innocence at the trial stage rather than leaving that issue unresolved, thus complicating subsequent correctional decisions." *Id.*

Accordingly, the drafters of Rule 11 "intended to make clear that a judge may reject a plea of nolo contendere and require the defendant either to plead not guilty or to plead guilty under circumstances in which the judge is able to determine that the defendant is in fact guilty of the crime to which he is pleading guilty." *Id.*

#### 2. *Effect of Nolo Contendere Pleas*

 For purposes of punishment, a plea of nolo contendere is the same as a guilty plea. Fed.R.Crim.P. 11, Advisory Comm. Note to 1974 Amend. The nolo contendere plea is technically an admission as to every essential element of the indictment. *United States v. Bessemer & Lake Erie R.R. Co.,* 717 F.2d 593, 597 (D.C.Cir.

1983). Although its literal meaning is "I do not contest it," a nolo plea is "tantamount to 'an admission of guilt,'" such that all that remains for the court to do after accepting the plea is enter judgment and pass sentence. *Lott v. United States,* 367 U.S. 421, 426, 81 S.Ct. 1563, 6 L.Ed.2d 940 (1961) (quoting *Hudson v. United States,* 272 U.S. 451, 455, 47 S.Ct. 127, 71 L.Ed. 347 (1926)). Unlike a guilty plea, however, a nolo plea cannot be used against a defendant as an admission in a subsequent criminal or civil case. *See* Fed.R.Evid. 410(a)(2); Fed.R.Crim.P. 11, Advisory Comm. Note to 1974 Amend.

■ By entering a nolo plea, a defendant waives any procedural rights that have a "direct connection to the determination of [the] defendant's guilt or innocence." *United States v. DeCosta,* 435 F.2d 630, 632 (1st Cir.1970). An appellate court, however, may still review it for jurisdictional defects and challenges to the sufficiency of the indictment. *Bessemer,* 717 F.2d at 597–98; *United States v. Am. Serv. Corp.,* 580 F.2d 823, 825 (5th Cir. 1978).

■ With respect to sentencing, while a reduction for acceptance of responsibility under a nolo contendere is not automatically barred by the nature of the plea, such a plea may be, as a general proposition, inconsistent with the acceptance of responsibility and is a relevant factor to consider when determining the sentence. *United States v. Gordon,* 979 F.Supp. 337, 342 (E.D.Pa.1997). Several cases outside this Circuit have come to this general conclusion. *See, e.g., United States v. Haversat,* 22 F.3d 790, 799 (8th Cir.1994) (holding that defendant's plea of *nolo contendere,* while continuing to minimize his role in price fixing conspiracy, was not acceptance of responsibility needed to justify a reduction in offense level); *United States v. Boyle,* 10 F.3d 485, 490 (7th Cir.1993) (affirming district court's refusal to reduce

defendant's offense level under the sentencing guidelines for acceptance of responsibility after a nolo contendere plea because defendant had not demonstrated any responsibility for his criminal conduct).

### 3. Standard for Consideration of Nolo Contendere Pleas

■ Throughout the federal district courts, "factors considered relevant by particular courts in determining whether to permit the plea of nolo contendere vary." Fed.R.Crim.P. 11, Advisory Comm. Note to 1974 Amend. This Court has no general policy as to whether to accept or reject nolo contendere pleas, instead exercising discretion depending on the circumstances.

Courts in this Circuit have identified a number of factors that may be helpful in deciding whether to accept a plea of nolo contendere. *United States v. B. Manischewitz Co.,* No. 90–119, 1990 WL 86441, at *2 (D.N.J. May 23, 1990); *United States v. H & M, Inc.,* 565 F.Supp. 1 (M.D.Pa.1982); *United States v. Rockwell Int'l Corp.,* No. 78–325, 1978 WL 1456 (E.D.Pa. Dec. 21, 1978). Those factors include:

1. The interests of private litigants in contemporaneous litigation;

2. The position of the Government;

3. The nature of the violations;

4. The duration of the violations;

5. The size and power of the defendant;

6. Prior violations by the defendant;

7. The impact of the conduct on the economy; and

8. The deterrent effect of the plea (i.e., whether a greater deterrent effect will result from conviction rather than from acceptance of the plea).

*See B. Manischewitz Co.*, 1990 WL 86441, at *2–3; *H & M, Inc.*, 565 F.Supp. at 1; *Rockwell Int'l Corp.*, 1978 WL 1456, at *1–2. Some courts also consider the interests of judicial economy, namely the elimination of the need for a trial. *H & M, Inc.*, 565 F.Supp. at 3. *But see B. Manischewitz Co.*, 1990 WL 86441, at *7 ("[T]he primary consideration ... is not that [the] defendant will be benefited by the plea, or that the case is a difficult and protracted one for the defendant, but the test [to be applied] is whether acceptance of the plea will be in the interest of sound administration of justice." (quoting *United States v. Lov–It Creamery, Inc.*, 704 F.Supp. 1532, 1541 (E.D.Wis.1989)). In evaluating a nolo plea, "[n]o one factor is determinative," and the courts "consider these factors as a whole." *B. Manischewitz Co.*, 1990 WL 86441, at *3.

While these factors provide helpful guidance to this Court in determining whether to accept Defendant McGill's nolo plea, they are not all inclusive nor are they all relevant in all cases. In fact, the three cases from this Circuit applying these factors all involved defendants charged with violating federal antitrust laws. Therefore, certain factors are irrelevant where the defendant is charged with another type of crime, such as healthcare fraud in the instant matter.[5] Other factors that appear more relevant to the facts of the instant matter include whether "acceptance of the plea would breed contempt for law enforcement, would be discriminatory, and would be incongruous," *Lov–It Creamery*, 704 F.Supp. at 1541 (quoting 2 *Orfield's Criminal Procedure Under the Federal Rules* § 11:61 (2d ed.1985)), and whether acceptance of the plea would result in disparate treatment among similarly situated defendants in the same case.

**B. *Alford* Pleas**

**1. *Alford* Pleas Generally**

■ An *Alford* plea generally refers to a guilty plea entered by a defendant who wishes to expressly maintain his innocence. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In *Alford,* Henry Alford was charged with the capital crime of first-degree murder and was "[f]aced with strong evidence of guilt and no substantial evidentiary support for the claim of innocence." *Id.* at 27, 91 S.Ct. 160. Evidence against him included the testimony of two witnesses that the defendant left his house with a gun saying that he intended to kill the victim and later returned saying that he had completed the act. *Id.* at 28, 91 S.Ct. 160. Rather than go through trial, Alford pleaded guilty to second-degree murder, thereby avoiding the capital sentence, while maintaining his innocence. *Id.* at 27–29, 91 S.Ct. 160. The Supreme Court held that a defendant may knowingly and voluntarily plead guilty even while insisting he is innocent if the judge finds "strong evidence of [the defendant's] actual guilt." *Id.* at 37, 91 S.Ct. 160. The Court equated Alford's plea with a plea of nolo contendere, stating that it could not "perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in [Alford's] case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *Id.*

■ "[T]here must always exist some factual basis for a conclusion of guilt before a court can accept an *Alford* plea." *United States v. Mackins,* 218 F.3d 263, 268 (3d Cir.2000). "Indeed, a factual basis

---

**5.** It appears that no other federal district court has identified specific factors that a court is to consider when deciding whether to accept or reject a nolo contendere plea in a healthcare fraud case.

for such a conclusion is an 'essential part' of an *Alford* plea." *Id.* (quoting *Willett v. Georgia*, 608 F.2d 538, 540 (5th Cir.1979)).

■ While a district court is constitutionally permitted to accept an *Alford* plea, a court is not required to do so. *Alford,* 400 U.S. at 38 n. 11, 91 S.Ct. 160. The *Alford* Court made clear that "[its] holding does not ·mean that a trial judge must accept every constitutionally valid guilty plea merely because a defendant wishes so to plead. A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court." *Id.* The Supreme Court went on to state that its decision in Alford did not intend to "delineate the scope of th[e] discretion" granted to the district court by Federal Rule of Criminal Procedure 11, which allows a judge to refuse to accept a guilty plea. *Id.*

Federal Rule of Criminal Procedure 11 "does not speak directly to the issue of whether a judge may accept a plea of guilty where there is a factual basis for the plea but the defendant asserts his innocence." Fed.R.Crim.P. 11, Advisory Comm. Note to 1974 Amend. The Advisory Committee recommends that "[t]he procedure in such case would seem to be to deal with this as a plea of nolo contendere, the acceptance of which would depend upon the judge's decision as to whether acceptance of the plea is consistent with 'the interest of the public in the effective administration of justice,' " as required by Rule 11(a)(3). *Id.* As it did with nolo pleas, the Advisory Committee recognized that "[t]he defendant who asserts his innocence while pleading guilty ... is often difficult to deal with in a correctional setting, and it may therefore be preferable to resolve the issue of guilt or innocence at the trial stage rather than leaving that issue unresolved, thus complicating subsequent correctional decisions." *Id.*

■ The Third Circuit has never prescribed a standard that courts should use in deciding whether to accept or reject an *Alford* plea. However, the Tenth Circuit has held that "[w]hen a defendant offers an *Alford* plea[,] the proper procedure is to treat the plea as a plea of nolo contendere." *Buonocore,* 416 F.3d at 1129–30. Given the *Alford* Court's pronouncement that *Alford* pleas are substantially similar to nolo contendere pleas and the Advisory Committee's suggestion that both types of pleas should be treated in the same manner, the Tenth Circuit's approach is sound. Accordingly, the Court has broad discretion in determining whether to accept an *Alford* plea and will undertake the same type of factual analysis discussed supra in subsection II.A.3 when analyzing an *Alford* plea.

### 2. *Effect of Alford Pleas*

For purposes of sentencing, the Third Circuit has held that an *Alford* plea is undoubtedly an adjudication of guilt:

> [A]n *Alford* plea is simply a guilty plea, with evidence in the record of guilt, typically accompanied by the defendant's protestation of innocence and his or her unequivocal desire to enter the plea.... That the defendant asserts his or her innocence, however, does not change the fact that he or she ultimately enters a guilty plea. Thus, as the government succinctly states, "[t]here is no such thing [as an *Alford* disposition], at least not separate and distinct from a plea of guilty."

*Mackins,* 218 F.3d at 268 (holding that a prior sentence imposed as a result of an Alford plea qualified as a "prior sentence" for purposes of computing a defendant's criminal history category).

■ As with nolo contendere pleas, while a reduction for acceptance of responsibility under an *Alford* plea is not automatically barred by the nature of the plea,

under certain circumstances, such a plea may be inconsistent with the acceptance of responsibility and is a relevant factor to consider at sentencing. *Gordon*, 979 F.Supp. at 342; *see also United States v. Alexander*, No. 95–5918, 1996 WL 614789, at *1 (4th Cir. Oct. 25, 1996) (affirming district court's denial of a reduction for acceptance of responsibility after an *Alford* plea, because such a plea "is a relevant factor to consider"); *United States v. Harlan*, 35 F.3d 176, 181 (5th Cir.1994) (affirming district court's refusal to grant a reduction in sentence for acceptance of responsibility for an *Alford* plea). As with the nolo contendere plea, the Court has no general policy as to whether to accept or reject *Alford* pleas, and it exercises discretion depending on the circumstances.

### III. DEFENDANT'S MOTION TO ENTER A NOLO CONTENDERE PLEA OR *ALFORD* PLEA

█ In Defendant's "Memorandum Concerning Alternative Pleas," ECF No. 326, Defendant McGill does not make clear whether she intends to negotiate a nolo contendere or *Alford* plea with the Government. Defendant seems to argue that she is entitled to enter either type of plea, because "all that is necessary for the plea's acceptance" is "a voluntary and intelligent decision to plead guilty or nolo contendere supported by an adequate factual basis for the plea," and both can be demonstrated as to Defendant.[6] Def.'s Mem. 3. She fails to recognize, however, that a court has broad discretion as to whether to accept or reject a nolo or *Alford* plea. Accordingly, Defendant fails to set forth particular circumstances that suggest that allowing such a plea in this case would serve "the public interest in the effective administra-

tion of justice." Fed.R.Crim.P. 11. While Defendant explains that she has previously suffered a stroke and that the stresses of trial could have an adverse impact on her health, Def.'s Mem. 2, she does not explain why entering a plea of guilty—as many of her supervisors and coworkers charged in the HCH fraud scheme have done—is not an option for her, provided, of course, that she does so knowingly and voluntarily.

In the Government's response to Defendant's memorandum regarding alternative pleas, ECF No. 327, the Government explains that Department of Justice policy requires Assistant United States Attorneys and Criminal Division Trial Attorneys to oppose acceptance of a plea of nolo contendere or an *Alford* plea except in "extraordinary cases." As with the Defendant, the Government does not explain what those extraordinary circumstances might entail or otherwise set forth factors or considerations that should guide the Court's discretion in determining whether to accept or reject a nolo or *Alford* plea in this case. However, the Government states that extraordinary circumstances warranting entry of a nolo or *Alford* plea are not present in the instant case.

█ As discussed above, in determining whether to accept Defendant McGill's possible nolo contendere or *Alford* plea in the instant healthcare fraud case, this Court will consider the following factors in guiding its discretion as to whether such a plea is in the public interest: (1) the interests of private litigants in contemporaneous or future civil or criminal litigation, if any; (2) the position of the Government; (3) the nature of the violations; (4) the duration of the violations; (5) prior violations by the defendant; (6) the impact of the conduct on the public, or federal tax-

---

**6.** In making this assertion, Defendant relies on two cases: *United States v. Davis*, 516 F.2d 574 (7th Cir.1975), and *United States v. Jerry*, 487 F.2d 600 (3d Cir.1972). The Court has reviewed both cases, and neither supports Defendant's proposition that she is entitled, as of right, to have her proffered nolo or *Alford* plea accepted by the Court.

payers; (7) the deterrent effect of the plea; (8) whether acceptance of the plea would be discriminatory or incongruous; and (9) the defendant's unique circumstances. The Court will consider those each of these factors in turn.

### 1. The Interests of Private Litigants in Contemporaneous or Future Litigation

The Court recognizes that in certain kinds of case, such as criminal antitrust cases, the defendant's interest in protection in contemporaneous or future civil litigation are important and weigh in favor of the acceptance of a nolo or an *Alford* plea. In those cases, entry of a guilty plea would allow civil litigants to pursue the defendant and use the guilty plea as a basis for civil liability. The Court also recognizes that under Federal Rule of Evidence 410, a nolo contendere plea is not admissible against a defendant in any later civil or criminal case in the federal courts. Fed.R.Evid. 410(a)(2). However, there is no reason to believe that Defendant McGill will be subject to future. civil or criminal litigation as a result of her role in the HCH scheme. Therefore, Defendant cannot assert any legal or financial interest which will be protected by making a nolo or *Alford* plea in this case.

### 2. The Position of the Government

The Government opposes Defendant McGill's proffered nolo or *Alford* plea pursuant to Department of Justice policy. Specifically, the Government contends that such pleas are only warranted in "extraordinary circumstances," and those circumstances do not exist in this case. "[C]ommon sense dictates that the government's position should be carefully considered," because "the government represents the public and ... the public interest is the paramount factor in the analysis" as to whether to accept a nolo or *Alford* plea. *B. Manischewitz Co.*, 1990 WL 86441, at

*4. The Government's position here shows that it is willing and able to go forward with the prosecution and that it believes the public's interest would be best advanced by rejection of the plea. While not dispositive, the Government's view should be given weight.

### 3. The Nature of the Violations

Defendant McGill is charged with conspiracy and thirteen substantive counts of healthcare fraud. The Court finds that healthcare fraud is a serious problem in the United States today, and the issue has been the subject of significant national attention—particularly at this time of healthcare reform and great sensitivity to rising healthcare costs.

Fraud is a well-known contributor to increased costs for healthcare services. *Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1368 (11th Cir.2011) (citing Barry R. Furrow et al., *Health Law: Cases, Materials, and Problems* 570 (6th ed.2008)). Some estimate that the financial losses due to healthcare fraud are in the tens of billions of dollars each year. See Nat'l Health Care Anti–Fraud Assoc., *The Challenge of Health Care Fraud*, http://www.nhcaa.org/resources/health-care-anti-fraud-resources/the-challenge-of-health-care-fraud.aspx. Medicare and Medicaid fraud increases the cost to the government of providing insurance benefits to the elderly and the poor, and because those programs are funded by taxpayer dollars, taxpayers are ultimately made to pay for the costs added to these programs. *Id.*

Perhaps worse than stealing taxpayer dollars, healthcare fraud compromises physician-patient relationships and puts the health of vulnerable populations—the poor, the sick, and the elderly—at risk. To the extent that a nolo or *Alford* plea tends to depreciate the seriousness of the offenses allegedly committed by Defendant, this factor counsels against its acceptance.

#### 4. *The Duration of the Violations*

The Court also must take into account the duration of the activity and the reason why it ceased. The indictment charges that the HCH scheme to defraud Medicare began around January 2005 and ended in December 2008—a period of nearly four years. The significant duration of the alleged illegal activity, together with the fact that the activity did not cease until detected by the authorities, factors against acceptance of the nolo or *Alford* plea.

#### 5. *Prior Violations by the Defendant*

The Court knows of no prior violations by Defendant McGill, so this factor weighs in her favor.

#### 6. *The Impact of the Conduct on the Public, or Federal Taxpayers*

According to the indictment, Defendant McGill authorized HCH nursing staff and supervisors to fabricate and falsify documents in support of hospice care for patients who were not eligible for hospice care or for a higher, more costly level of care than was actually provided to the patients. Between January 2005 and December 2008, approximately $9,328,000 in fraudulent claims for inappropriate patients were submitted to Medicare. Moreover, the alleged criminal activity undermines the public confidence in the administration of Medicare and Medicaid system.

#### 7. *The Deterrent Effect of the Plea*

Under this factor, the Court will consider both the deterrent effect on Defendant herself and the deterrent effect on the healthcare community at large. Defendant McGill's nursing license has expired in Pennsylvania, and due to her age and health problems, there is little reason to believe that she would practice nursing and have the opportunity to commit

healthcare fraud again. However, the large public concern over healthcare fraud, and the prevalence of fraudulent practices in the industry, supports rejection of the nolo or *Alford* plea. The public's view of a nolo plea (and for that matter, the *Alford* plea) is often that it is a mere "slap on the wrist," and the "public should not be given the impression that the judiciary has no interest in adjudicating [a] defendant's guilt or innocence" in such serious matters. *B. Manischewitz Co.*, 1990 WL 86441, at *6. The Court therefore finds that the deterrent effect weighs in favor of rejection of the plea.

#### 8. *Whether Acceptance of the Plea Would Be Discriminatory or Incongruous*

A number of Defendant McGill's supervisors and coworkers, including subordinate nurses who worked under her direction, have already pleaded guilty or have been found guilty by juries with respect to their involvement in the same fraudulent scheme. The evidence against Defendant McGill appears to be just as strong. It would result in disparate treatment of similarly situated defendants—some less culpable than Defendant—to allow one but not the others to enter a nolo or *Alford* plea.

#### 9. *The Defendant's Unique Circumstances*

Defendant contends that due to her health conditions, in her view, she is not able to withstand the stresses of trial and that, under the circumstances, she should be allowed to enter a nolo or *Alford* plea. The Court, upon consideration of three expert medical opinions and after a hearing, found that Defendant was competent to stand trial or alternatively to enter an informed and voluntary plea of guilty.[7]

---

**7.** Should Defendant plead guilty or be found guilty at trial, her health conditions will be considered by the Court at sentencing.

Additionally, Defendant has failed to articulate why entering a plea of nolo contendere or an *Alford* plea will alleviate her health concerns, while entering a plea of guilty would not.

## IV. CONCLUSION

The Court, after weighing all of the relevant factors, cannot conclude that acceptance of a plea of nolo contendere or an *Alford* plea by Defendant McGill is in the interest of the public in the effective administration of justice. Accordingly, the Court will reject Defendant's proffered nolo contendere or *Alford* plea.

### *ORDER*

**AND NOW**, this **11th** day of **September, 2015**, for the reasons stated in the accompanying memorandum opinion, it is hereby **ORDERED** that Defendant McGill's motion to plead nolo contendere or make an *Alford* plea as to Count One of the indictment charging conspiracy to commit healthcare fraud (ECF No. 326) is **DENIED**.